119 So.2d 732 (1960)
M.O. COOKE and James C. Schuyler, d/b/a Knickerbocker Fine Cars, Appellants,
v.
COMMERCIAL BANK OF MIAMI, Appellee.
No. 59-37.
District Court of Appeal of Florida. Third District.
April 7, 1960.
Rehearing Denied May 4, 1960.
Smith & Carter, Miami, for appellants.
Smathers, Thompson & Dyer and Earl D. Waldin, Jr., Miami, for appellee.
PEARSON, Judge.
The appellants are M.O. Cooke and James C. Schuyler doing business as Knickerbocker Fine Cars. They were the plaintiffs in the court below. The appellee-defendant is the Commercial Bank of Miami. Plaintiffs brought their action claiming damages for the bank's failure to stop payment upon a check. They alleged the check was paid after receipt of a stop payment order by the bank. At the conclusion of all of the evidence, the plaintiffs moved for a directed verdict upon the *733 basis that the liability of the bank was established without issue and that the damages were liquidated. The trial judge denied plaintiffs' motion for directed verdict and submitted the cause to the jury upon one issue. The issue was:
"If you find from the preponderance of the evidence that on the 18th day of July, 1957, the Plaintiff, James C. Schuyler requested or instructed the Commercial Bank of Miami to notify the Boulevard National Bank to return for payment a $6,400 check he had given Toni Clausi, doing business as Auto Wholesaler and the check was returned to the Commercial Bank for payment pursuant to such request or instruction, in that event the actions and conduct of the Plaintiff would make ineffective his later stop payment order on said check, and your verdict must be for the Defendant.
"However, if you find that Mr. Schuyler made no such request that the check be returned for payment and it was, then you must find for the Plaintiffs. That simply is the question to be decided by you, whether or not that was done under those circumstances."
The question to be decided upon this appeal is whether or not the bank's liability appeared as a matter of law. The appellants properly moved after the jury verdict for a judgment in conformity with their motion for directed verdict. We hold that a verdict for the plaintiffs should have been directed and the judgment for the defendant is reversed.
On Monday, July 15, 1957, a check, hereinafter referred to as check 1, was drawn on the Commercial Bank of Miami by the plaintiffs for $6,400 and made payable to Auto Wholesalers. It was on that date delivered to the payee by the plaintiffs. On Tuesday, July 16, 1957, Auto Wholesalers deposited the check to its account in the Boulevard National Bank of Miami.
On Wednesday, July 17, 1957, check 1 was received by the defendant-bank. At the time of receipt there were insufficient funds on deposit in the plaintiffs' account to pay the same. Mr. Schuyler was notified of this deficiency. Shortly before closing of the bank for business on that day, Mr. Schuyler appeared and made a deposit sufficient to cover the check. The bank failed to pay the check, and it was returned to the Boulevard Bank. On this same Wednesday, July 17, a second check in the sum of $6,400, hereafter referred to as check 2, was delivered by the plaintiffs to Auto Wholesalers.
On Thursday, July 18, 1957, Mr. Schuyler telephoned the Commercial Bank and asked Mr. Waters, the head bookkeeper, to call the Boulevard Bank in order to explain to him the exact circumstances concerning check 1. Mr. Schuyler requested Mr. Waters to inform the Boulevard Bank that the plaintiffs had funds on deposit in the Commercial Bank to cover the check. Mr. Waters testified: "Mr. Schuyler wanted me to call Boulevard and tell them that the funds were available for this item [check 1] and he wanted this check brought back for payment."
On Friday, July 19, 1957, check 1 was received by defendant-bank having been returned for payment by the Boulevard Bank. On Saturday, July 20, the payee of the two checks (Auto Wholesalers) was taken over by creditors.
On Monday, July 22, 1957, Mr. Schuyler went to the Commercial Bank. He requested and received stop payment forms. An official of the bank went to the bookkeeping department and withdrew the checks from the bookkeeping department Neither check had yet been stamped as paid nor had any entry been made upon the account of the plaintiffs. Pursuant to the stop payment forms check 1 and check 2 were at this time stamped by an official of the bank with a "stop payment" notation.
Thereafter an official of the defendant-bank called the Boulevard Bank to advise *734 it of Mr. Schuyler's stop payment order and was informed by an official of the Boulevard Bank that payments on check 1 could not be stopped because said check had been recalled for payment on July 18, 1957, and the Boulevard Bank had disbursed funds under the check.
It is well established that an ordinary unaccepted or uncertified check on a general account is simply an order which may be countermanded and payment forbidden by the drawer at any time before it is actually paid or accepted by the bank on which it is drawn. See First Nat. Bank of Miami v. Davis, 150 Fla. 673, 8 So.2d 403. See also cases cited at 5A Michie, Banks and Banking, § 193 (perm. ed.); 7 Am.Jur., Banks, § 602; 9 C.J.S. Banks and Banking § 344a. The question that must be determined in this case is: Was payment on check 1 made prior to or subsequent to the stop payment order? In this connection our attention is called to § 676.55, Fla. Stat., F.S.A. This statute provides:
"A check or draft received for deposit or collection by a solvent payor or drawee bank shall not be deemed paid or accepted until the amount is charged to the account of the maker or drawer unless, though not so charged, such item is retained by the drawee or payor bank longer than the end of the business day following its receipt."
It is the position of the appellants that this statute is controlling. It is urged, that since the account of the plaintiffs (depositors) had not been debited upon the books of the bank and since check 1 had been withdrawn from the payment file and had been properly stamped "stop payment", the check was not paid or accepted at the time of the stop payment order.
It is the position of the appellee-bank that the above quoted statute is not applicable. It is urged, that under established banking practice, a check recalled for payment is considered paid as of the time of the recall for payment. In other words it is argued, that inasmuch as the recall for payment was initiated upon the oral request of the plaintiffs and pursuant thereto the defendant-bank as well as the Boulevard Bank acted upon this oral request, that as between the bank and the depositor, the depositor's account was actually charged with the check at the time of recall although the record of the charge upon the account had not yet been made. In this connection the cross-examination of plaintiffs' expert witness revealed the following:
"Q. I will give you this set of facts: Assuming this set of facts, that on the 15th day of July, 1957, the depositor issued a check to the payee in the sum of $6,400.00. The payee of that check deposited the check in  we use this bank. The Boulevard National Bank of Miami  and that check cleared through the clearing house to the Commercial Bank of Miami, which was the drawee bank; then through an error, that check was returned because of insufficient funds and while that check was at the payee's bank  that is, the Boulevard National Bank  the depositor came to the Commercial Bank and requested the Commercial Bank to notify the Boulevard Bank to return that check for payment.
"You have already stated that the bank is under an obligation to carry out the instructions of its depositor. Is it not a fact that when the bank acts at the request of the depositor and instructs the payee's bank to return the check for payment, that that check is considered paid at that time? A. Providing there would be a sufficiency of funds to back it up, yes."
Mr. Garrett, an officer of the defendant-bank, testified:
"Q. Now, at the time this check was recalled for payment on July 18, 1957, were there sufficient funds in the *735 bank to pay that particular check, sir? You may refer to the ledger. A. On July the 18th, were there sufficient funds to pay the $6,400.00?

"Q. Yes. A. Yes, there was."
We must conclude therefore that at least an issue was raised as to the existence of a banking custom which would sustain the position of the bank.
Although customs and usages of the banking business may have a binding force as between banks, and between a bank and the person with whom it deals in the absence of an express agreement to the contrary,[1] the custom or usage must not be repugnant to the express provisions of a statute. See Wilson v. Jernigan, 57 Fla. 277, 49 So. 44, 55. Thus there is a conflict between the custom as testified to by the expert and the statutory regulation. Custom defines the act constituting payment as the recall of the check at the payee's bank by the drawee bank at the request of the depositor. The statute defines the act constituting payment as the charging of the account of the drawer. Since custom must yield to the positive law, the bank was bound by the stop payment order received by it prior to debiting the drawer's account.
We therefore conclude that the court submitted the case to the jury upon an immaterial issue. At the time of plaintiffs' motion for directed verdict at the conclusion of all of the evidence it conclusively appeared that the bank had received a stop payment order prior to the payment of the check, as payment is defined by the law of Florida. The judgment is reversed and the cause remanded with directions to enter a judgment for the plaintiffs.
Reversed and remanded with directions to enter judgment.
HORTON, C.J., and CARROLL, CHAS., J., concur.
NOTES
[1] See cases cited at 25 C.J.S. Customs and Usages § 19b; 9 C.J.S. Banks and Banking § 159; 7 Am.Jur., Banks § 5.