ON MOTION FOR REHEARING EN BANC OR, IN THE ALTERNATIVE, MOTION FOR CERTIFICATION

WELLS, Judge.
We grant rehearing en banc, withdraw our prior opinion in Deutsche Bank Trust Co. Americas v. Beauvais, 40 Fla. L. Weekly D1, 2014 WL 7156961 (Fla. 3d DCA Dec. 17, 2014), and substitute this opinion in its stead.
Deutsche Bank appeals from a final summary judgment denying foreclosure of a mortgage securing a $1,440,000 promissory note executed in the bank’s favor by borrower Harry Beauvais. The complaint filed by the bank on December 18, 2012, alleged entitlement to relief by virtue of Beauvais’ failure to pay an installment payment due on October 1, 2006, “and all subsequent payments.” The complaint, in addition to naming Beauvais, joined a number of entities with potential interests in the property securing the bank’s loan including the Aqua Master Association, Inc., the condominium association for the premises at issue.
By the time this action was commenced, Beauvais no longer held title to the condominium securing payment of this loan, his interest having been foreclosed and title transferred in 2011 to Aqua to satisfy outstanding condominium assessments. Be-auvais, with no interest in the property, filed no answer to the bank’s complaint and asserted no defenses to foreclosure of the bank’s loan. The bank moved for a default; however, none appears to have been entered. Aqua, on the other hand, now title holder of the property securing the bank’s loan, filed an answer and affirmative defenses in which it alleged that the instant action was barred by the five year statute of limitations governing mortgage foreclosures. See § 95.11(2)(c), Fla. Stat. (2013). According to Aqua, the bank’s cause of action for foreclosure accrued in 2007 when the bank’s predecessor in interest accelerated the balance due on the loan by filing a prior suit to collect on á September 1, 2006 default,[1] and because the bank failed to pursue foreclosure within five years of that acceleration/accrual *941 after the first suit was dismissed, the instant action was time barred.
The trial court agreed and granted judgment in Aqua’s favor:
The previous mortgage holder filed suit against borrower [Beauvais] and the Association on January 23, 2007, alleging] that the borrower defaulted on the mortgage and elected to accelerate payment of the balance due on the note and mortgage. The prior complaint specifically declared the full amount payable under the note and mortgage, $1,439,976.80, to be due.. However, the action was dismissed without prejudice on plaintiffs non-appearance at initial case management conference on December 6, 2010. On December 12, 2012, Plaintiff filed the instant suit to foreclose the mortgage. The complaint called for the entire balance of $1,439,976.80, to be due.
Association is correct that the filing of the prior lawsuit in 2007 triggered the running of the statute of limitations with respect to the' entire balance of the mortgage and note. The case to which the Plaintiff cites, Singleton v. Greymar Assoc., 882 So.2d 1004 (Fla.2004), is in-apposite and concerns only the application of res judicata in an action to collect discrete payments under an installment contract. Singleton is not only distinguishable from the facts of the instant case, it is wholly irrelevant'to the issue of the statute of limitations raised by the Association.
It is the determination of this Court that the right to accelerate was exercised by the filing of the prior lawsuit on January 23, 2007. Since more than five years elapsed between the acceleration and the filing of the underlying suit, 'the action is barred by the statute of limitations. See § 95.11<2)(c), Fla. Stat_
The bank appeals. We reverse because we, like our sister courts, find the Florida Supreme Court’s decision in Singleton v. Greymar Associates, 882 So.2d 1004 (Fla.2004), applicable to the instant action, and that it mandates reversal. See Evergrene Partners, Inc. v. Citibank, N.A., 143 So.3d 954, 956 (Fla. 4th DCA 2014) (applying Singleton and concluding that' the statute of limitations would not bar foreclosure of an accelerated loan where an earlier, voluntarily dismissed, foreclosure' had been brought to'enforce the same loan accelerated for a separate default); see also Nationstar Mortg., LLC v. Brown, 175 So.3d 833, 834-35 (Fla. 1st DCA 2015) (applying Singleton to hold that the statute of limitations did not bar an action to foreclose an accelerated loan, brought more than five years after a prior , action to foreclose on the same accelerated loan had been brought but then voluntarily dismissed without prejudice); accord Hicks v. Wells Fargo Bank, N.A., 178 So.3d 957, 959 (Fla. 5th DCA 2015) (citing Singleton and concluding “we reject Homeowners’ implication in their brief that Banl^ is now forever barred from bringing an action .to foreclose. Despite the previous acceleration of the balance owed in both the instant suit and prior suit, Bank is not precluded from filing" a new foreclosure action based on different acts or dates of default not previously alleged, provided that the subsequent foreclosure action on the subsequent defaults is brought within the statute of limitations period found in section 95.11(2)(c), Florida Statutes”).

1. Application of Singleton to the instant case.

a. Singleton allows for multiple actions for individual defaults with accompanying accelerations.

.In Singleton, the Florida Supreme Court held that “successive foreclo *942 sure suits, regardless of whether or not the mortgagee sought to accelerate payments on the note in the. first suit,” were not barred if, as here, the second suit was predicated on a. new default, because a “subsequent, and separate alleged default create[s] a new default and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action.” Singleton, 882 So.2d at 1008 (emphasis added); see, e.g., PNC Bank, NA v. Neal, 147 So.3d 32, 32 (Fla. 1st DCA 2013) (stating, that “the dismissal with prejudice of PNC Bank’s foreclosure action .,. does not preclude PNC Bank from instituting a new foreclosure action based on a different act or a new date of default not allegéd in the dismissed action”); Star Funding Solutions, LLC v. Frondes, 101 So.3d 403, 403 (Fla. 4th DCA 2012) (citing Singleton as support for the conclusion that dismissal with prejudice of the instant action would have no impact on a subsequent foreclosure action because “[a] new default, based on a different act or date of default not alleged in the dismissed action, creates a new cause of action”); Olympia Mortg. Corp. v. Pugh, 774 So.2d 863, 867 (Fla. 4th DCA 2000) (confirming that Voluntary dismissal of a foreclosure action on an accelerated mortgage and note did not bar a subsequent action on a later default); accord St. Louis Condo. Ass’n, Inc. v. Nationstar Mortg., LLC, No. 14-21827-CIV, 2014 WL 6694780, at *2 (S.D.Fla. Nov. 26, 2014) (“When a ‘mortgagee’ initiates a foreclosure action and invokes its right of acceleration, if the mortgagee’s foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file later foreclosure actions-and to seek acceleration of the entire debt-so long as they are based on separate defaults.’ Dorta v. Wilmington Trust Nat’l Assoc., 13-cv-185-OC-10PRL, 2014 WL 1152917, at *2-4 (M.D.Fla. Mar. 24, 2014) (relying on Singleton v. Greymar Assoc., 882 So.2d 1004 (Fla.2004) (per curium [sic])). Contrary to Plaintiffs assertions, ‘an unsuccessful foreclosure action does not subsequently render a mortgage forever invalid and unenforceable.’ Id. Rather, the Note and Mortgage remain enforceable and Defendant still has the right to file foreclosure actions based on separate defaults.”); Diaz v. Deutsche Bank Nat’l Trust Co., No. 14-22583-CIV, 2014 WL 4351411, at *3 (S.D.Fla. Sept. 2, 2014)[2],[3]

*943
b. Singleton considered the view that an acceleration of payments once put at issue is determinative, and rejected that proposition.

In coming to this conclusion, the Florida Supreme Court considered, and expressly rejected the view espoused in Stadler v. Cherry Hill Developers, Inc., 150 So.2d 468 (Fla. 2d DCA. 1963), that an acceleration of payments once put at issue is determinative. In Stadler, the Second District held that acceleration of payments in a foreclosure action on one defaulted installment payment put the entire loan balance at issue, thereby precluding a second foreclosure action on a subsequent default. Faced with a conflict between this determination in Stadler and the Fourth District’s opinion in Singleton v. Greymar Associates, 840 So.2d 356 (Fla. 4th DCA 2003), finding that a second foreclosure on a “new and different breach” would not be precluded, the Supreme Court chose to adopt the view employed by the Fourth District to find that a lender could maintain a separate action for foreclosure for a default which occurred after acceleration on an earlier default:
[W]e can envision many instances in which the application of the Stadler decision would result in unjust enrichment or other inequitable results. If res ju-dicata prevented a mortgagee from acting on a. subsequent default even after an earlier claimed default could not be established, the mortgagor would have no incentive to make future timely payments on the note. ¡The adjudication of the earlier default would essentially insulate her, from. future foreclosure action on .the note — merely because she prevailed in.the first action. Clearly, justice would not be served if the mortgagee was barred from challenging the subsequent default payment solely because he failed to prove the earlier alleged default.
We must also remember that foreclosure is an equitable remedy and there may be some tension between a court’s authority to adjudicate the equities and the legal doctrine of res judicata. The ends of justice require that the doctrine of res judicata not be applied so strictly so as to prevent mortgagees from being able to challenge multiple defaults on a mortgage. We can find no valid basis *944 for barring mortgagees from challenging subsequent defaults on a mortgage and note solely because they did not prevail in a previous attempted foreclosure based upon a separate alleged default.
Singleton, 882 So.2d at 1007-08 (citation omitted).
Here we follow that choice. And, as have numerous post-Singleton courts before us, we apply this determination, while made in the context of a res judicata defense, to a statute of limitations defense. See, e.g., Brown, 175 So.3d at 834 (applying Singleton to a statute of limitations defense); Evergrene Partners, Inc,, 143 So.3d at 955, 956 (same); U.S. Bank Nat’l Ass’n v. Bartram, 140 So.3d 1007, 1014 (Fla. 5th DCA 2014), review granted, 160 So.3d 892 (Fla. Sept. 11, 2014) (“Based on Singleton, a default occurring after a failed foreclosure attempt creates a new cause of action for statute of limitations purposes, even where acceleration had been triggered and the first case was dismissed on its merits. Therefore, we conclude that a foreclosure action for default in payments occurring after the order of dismissal in the first foreclosure action is not barred by the statute of limitations found in section 95.11(2)(c), Florida Statutes, provided the subsequent foreclosure action on the subsequent defaults is brought within the limitations period.”); Dorta, 2014 WL 1152917, at *6 (rejecting a claim that the statute of limitations barred any further actions to foreclose after a previous action for foreclosure on an accelerated loan had been involuntarily dismissed, finding that Singleton “directly refutes this argument, holding that even where a mortgagee initiates a foreclosure action and invokes its right of acceleration, if the mortgagee’s foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file later foreclosure actions — and to seek acceleration of the entire debt — so long as they are based on separate defaults”); see also Smathers v. Nationstar Mortg., LLC, No. 5:14-cv-415-Oc-30 PRL, 2014 WL 4639136, at *2 (M.D.Fla. Sept. 16, 2014) (applying Singleton in a statute of limitations case and confirming that an acceleration and foreclosure predicated upon a subsequent and different default would not be barred by the dismissal of an earlier action predicated on a separate and distinct default); accord LNB-017-13, LLC v. HSBC Bank USA, 96 F.Supp.3d 1358, 1363-64 (S.D.Fla.2015) (citing a litany of cases relying upon Singleton to conclude that “the current state of the law does not support [a claim that] ... prior acceleration and expiration of the 5-year statute of limitations for foreclosure actions bars all other foreclosure actions based on non-payment”).
We therefore conclude that dismissal of a foreclosure action accelerating payment on one default does not bar a subsequent foreclosure action on a later default if the subsequent default occurred within five years of the subsequent action. See Solonenko v. Georgia Notes 18, LLC, 182 So.3d 876, 877 (Fla. 4th DCA 2016) (“[T]he present action, which was brought in February 2014, was based upon a different event of default [than the 2008 foreclosure action] — namely the borrowers’ failure to make the payment due on March 1, 2009.... Therefore, under this court’s precedent, the action was timely brought within the five-year statute of limitations.”); Hicks, 178 So.3d at 959 (finding that “Bank is not precluded from filing a new foreclosure action based on different acts or dates of default not previously alleged, provided that the subsequent foreclosure action on the subsequent defaults is brought within the statute of limitations period found in section 95.11(2)(c), Florida Statutes”); Evergrene Partners, Inc., 143 So.3d at 956 (“While any claims relating to individual payment defaults that are now *945 more than five years old may be subject to the statute of limitations, each payment default that is less than five years old ... created a basis for a subsequent foreclosure and/or acceleration action.” (quoting Kaan v. Wells Fargo Bank, N.A., 981 F.Supp.2d 1271, 1274 (S.D.Fla.2013))); Bartram, 140 So.3d at 1014 (concluding that “a foreclosure action for default in payments occurring after the order of dismissal in the first foreclosure action is not barred by the statute of limitations found in section 95.11(2)(c), Florida Statutes, provided the subsequent foreclosure action on the subsequent defaults is brought within the limitations period”); see, also Kaan, 981 F.Supp.2d at 1274 (finding that, under Singleton and section 95.11(2)(c), Wells Fargo was allowed to bring a subsequent foreclosure action relating to subsequent payment defaults on the note and mortgage that were less than five years old). It is the fact that the bank alleged the failure to pay the October 1, 2006 installment payment “and all subsequent payments” that makes the instant case fall within the rule as set out herein. (Emphasis added).
c. Whether a dismissal is with or without prejudice is irrelevant to a lender’s right to file subsequent foreclosure actions on subsequent defaults.
Under Singleton, subsequent defaults allow for subsequent accelerations regardless of the nature of a prior dismissal. A lender’s right to file a subsequent action to foreclose on an accelerated note following a subsequent default does not turn on whether the first action to foreclose on an earlier default and acceleration was dismissed with or without prejudice. As Singleton teaches, even a dismissal with prejudice which adjudicates the merits of a first filed foreclosure action only precludes the lender from recovering on the underlying defaulted installment and returns the lender and the borrower to the status quo which permits the lender to file subsequent foreclosure actions based on subsequent default's. See Singleton, 882 So.2d at 1007 (“[I]f the plaintiff in a foreclosure action goes to trial and loses on the merits, we do not believe such plaintiff would be barred from filing a subsequent foreclosure action based upon a subsequent default. The adjudication merely bars a second action relitigating the same alleged default. A dismissal with prejudice of the foreclosure action is tantamount to a judgment against the mortgagee. That judgment means that the mortgagee is not entitled to foreclose the ‘ mortgage .... Accordingly, we do not believe the dismissal of the foreclosure action in this case barred the subsequent action on the balance of the note.” (quoting Capital Bank v. Needle, 596 So.2d 1134, 1138 (Fla. 4th DCA 1992))).
A dismissal without prejudice- which does not adjudicate the merits-of a first filed foreclosure action, similarly can do no more than terminate a lender’s ability to collect on the underlying defaulted installment, again leaving the lender free to accelerate and file a subsequent foreclosure action for subsequent defaults. See Brown, 175 So.3d at 834-35 (citations omitted) (“We find that appellant’s assertion of the right to accelerate was not irrevocably ‘exercised’ within the meaning of cases defining accrual for foreclosure actions, when the right was merely asserted and then dismissed without prejudice. After the dismissal without prejudice, the parties returned to the status quo that existed prior to the filing of the dismissed complaint. As a matter of law, appellant’s 2012 foreclosure action, based on breaches that occurred after the breach that triggered the first complaint, was not barred by the statute of limitations.”).
*946 Thus, as concluded in Bartram, and alluded to in Dorta, the “with” or “without prejudice” dismissal is a- distinction without a,difference. Bartram, 140 So.3d at 1013 n. 1 (“We acknowledge that the Bank suffered a dismissal with prejudice of its earlier foreclosure action, unlike the dismissal in Dorta, but conclude that the distinction is not material for purposes of the issue at hand.”); Dorta, 2014 WL 1152917 at *6 n. 3 (“Singleton involved a dismissal with prejudice; whereas Citibank’s foreclosure action was merely dismissed without prejudice. Dismissals without prejudice are not considered adjudications of the merits, and therefore there was no effective acceleration of the Note and the Mortgage.”); see also Espinoza v. Countrywide Home Loans Servicing, L.P., 2014 WL 3845795 at *4 (S.D.Fla. Aug. 5, 2014) (“Pursuant to Singleton, when ‘a mortgagee initiates a foreclosure action and invokes its right of acceleration, if the mortgagee’s foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file later foreclosure, actions ... so long as they are based on separate defaults.’” . (Emphasis added) (quoting Dorta, 2014 WL 1152917 at *6)). As observed in In re Anthony, 534 B.R. 834, 838-39 (Bkrtcy.M.D.Fla.2015), “[t]he better view is that dismissals with and without prejudice operate in the same manner with respect to the statute of limitations in mortgage foreclosures.”
Simply stated, the holding in Singleton cannot be distinguished away on a with prejudice/mthout prejudice distinction; Whether voluntarily dismissed or dismissed with or without prejudice the result is the same: upon dismissal, acceleration of a note and mortgage is abandoned with the parties returned to the status quo that existed.prior to the filing of the dismissed action, leaving the lender free to accelerate and foreclose on subsequent defaults.
Finally, separate and apart from the analysis established by Singleton, case law confirms “[w]hen- an action is dismissed without a final adjudication on the merits, the parties are left as if the suit had never been filed. Epstein v. Ferst, 35 Fla. 498, 509, 17 So. 414, 415 (1895); 1 Fla. Jur.2d Actions § 220 (2003).” JB Int’l, Inc. v. Mega Flight, Inc., 840 So.2d 1147, 1150 (Fla. 5th DCA 2003). Thus, when the first foreclosure in this case was dismissed without prejudice, under established Florida ease law, the parties were returned to their prior positions and nothing barred a new and timely action for acceleration and foreclosure. Epstein, 17 So. at 415 (“A dismissal ‘without prejudice’ leaves the parties as if no action had been instituted.”).

2. The lender in this case was under no ■ obligation, contractually or legally, to “decelerate” this loan following dismissal.

a. The mortgage itself confirms that the installment nature of the loan continues even after acceleration.

There was no obligation on the bank to take any action to “decelerate” this loan following dismissal of the first foreclosure action because the mortgage itself confirms that the installment nature of. the loan continues even after.acceleration and the filing of a foreclosure action:
19. Borrower’s Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement ,of this Security Instrument discontinued at any time prior to the earliest of ... (e) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower. (a) pays Lender all sums which then would■ be due under this Security Instrument and the Note as if no acceleration had occurred. ... *947 Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.
(Emphasis added).
This provision, while addressing only a borrower’s right to cure, confirms that after acceleration, the borrower is not obligated to pay the entire accelerated balance due to cure but, until a final judgment is entered, need only bring the loan current to avoid foreclosure. Stated another way, despite acceleration of the balance due and the filing of an action to foreclose, the installment nature of a loan secured by such a mortgage continues until a final judgment of foreclosure is entered and no action is necessary to reinstate it via a notice of “deceleration” or otherwise'. As our sister court has confirmed, “[a]fter the dismissal ... the parties returned to the status quo that existed prior to the fíling of the dismissed complaint.” Brown, 175 So.3d at 835. No further acts were necessary on the bank’s part to “decelerate” this loan. See Matos v. Bank of New York, 2014 WL 3734578 at *1 (S.D.Fla. July 28, 2014) (“The statute of limitations has not run on this foreclosure action due to the dismissal of the prior foreclosure action, which decelerated the notice of acceleration.”).
Even if such an affirmative act were required to decelerate this loan and to reinstate its installment nature, the failure to do so following dismissal of the first action would not preclude the instant action. This is because the mortgage at issue here, clearly states that the bank’s failure to act will not work as a waiver of its rights under the note and mortgage:
UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by the Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization or the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender’s acceptance of payments from third persons, entities or Successors in Interest of Borrower or hi amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.
(Emphasis aclded).
Likewise the note provides for no waiver of the .noteholder’s right to payment:
6. BORROWER’S FAILURE TO PAY AS REQUIRED
(D) No Waiver By Note Holder
Even, if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right .to do so if I am in default at a later time.
Because the installment nature of the loan at issue did not terminate following acceleration - and foreclosure, and because dismissal of the foreclosure action returned the parties to the status quo existing, before acceleration, the bank was under no obligation to take any affirmative *948 action to reinstate the installment nature of the loan or to “decelerate.”

b. This reading of the mortgage contract is in accord with Florida and national mortgage industry practices and best serves the interests- of both mortgagees and mortgagors.

This conclusion is wholly consistent with both national and local industry custom and practice. As amici Fannie Mae and Freddie Mac[4] advise in an amicus brief provided on request, the mortgage at issue here is one of their “uniform mortgage instrument^]” drafted “to ensure uniformity in the residential housing finance market” nationwide. According to them, paragraph 19, the reinstatement provision, was inserted into their standard mortgage forms to benefit defaulting borrowers by allowing them to avoid foreclosure by catching up on missed installment payments rather than having to pay the entire balance of a loan following acceleration. This, according to Fannie Mae and Freddie Mac, effectively preserves the installment nature of a loan evén after acceleration making “deceleration” unnecessary following dismissal of a foreclosure action:
Because a borrower defaulting on his or her installment obligations has a continuing right to reinstate the Mortgage until entry of judgment (at which time the Mortgage ceases to exist), the installment nature of the contract exists for as long as the Mortgage does. Therefore, no affirmative act is necessary to reinstate the Mortgage’s installment obligations after dismissal.... [5]
Adding support to our conclusion, both The Business Law Section[6] of The Florida Bar and The Real Property Probate & Trust Law Section[7] of The Florida Bar confirm that the custom and practice in Florida is to treat a dismissal of a foreclosure action as “decelerating” an acceleration made in a foreclosure action. See Cooke v. Commercial Bank of Miami, 119 So.2d 732, 735 (Fla. 3d DCA 1960) (concluding “customs and usages of the banking business may have a binding force as between banks, and between a bank and the person with whom it deals in the absence of an express agreement to the contrary”); see also Sabatino v. Curtiss Nat’l Bank of Miami Springs, 446 F.2d 1046, 1053 (5th Cir.1971) (“Absent instructions or an express agreement to the contrary, *949 general customs and usage of the banking business may have ■ a binding effect be- • tween banks, and between a bank and the person with whom it deals.”).
In response to a number of inquiries posed by this court, The Real Property Probate & Trust Law Section reviewed the underlying mortgage and facts herein and relying on Florida statutes and case law provided the following responses which confirm our conclusion that the installment nature of the a loan continues following acceleration and that the practice in this State is that no more than dismissal of a foreclosure action is necessary to “decelerate” an accelerated loan:
1. Where a foreclosure action has been dismissed with the note and mortgage still in default:
a. Does the dismissal of the action, by itself, revoke the acceleration of the debt balance thereby reinstating the installment terms?

The Section responds:

The optional acceleration the lender exercised as part of the foreclosure process could not he effectuated until entry of the foreclosure judgment. Until then, that acceleration ivas subject to the foreclosure proceeding being dismissed for various reasons, including the borrower’s contractual right to reinstate and discontinue the foreclosure action by curing the past installment payment default. Absent a contrary provision in the mortgage contract, Florida law and equitable principles generally dictate the conclusion that no further affirmative act of deceleration is necessary. The dismissal itself should serve to revoke the acceleration made as part of the now dismissed foreclosure process and the parties should be deemed to have returned to their pre-filing status quo.

b. ■ Absent' additional action by the mortgagee can a subsequent claim of • acceleration for a new and different time period be made?

The Section responds:

Yes. The installment nature of the mortgage loan, the terms of this form of mortgage, Florida case law and equitable principles dictate allowing a subsequent acceleration and foreclosure action for any new and different default.

c. Does it matter if the prior foreclosure action was voluntarily or involuntarily dismissed, or whether the dismissal was with our without prejudice?

The Section responds:

The nature of the dismissal in a prior foreclosure action should not matter in a subsequent foreclosure based on a default occurring after the default that precipitated the prior foreclosure action. However, the nature of the dismissal may matter if the statute of limitations or doctrine of res judicata is applicable to the default at issue in the prior foreclosure action.

d. What is the customary practice?

e. The Section responds:

The RPPTL Section defers to the response in the Business Law Section of the Florida Bar’s amicus brief. That response is consistent with the RPPTL Section’s understanding of the customary practice. [The BLS responded: the customary practice appears to be acceleration of “optional acceleration” loans through the filing of suit and not through acceleration notices. Accordingly, the customary practice amongst the BLS’s members appears to be based on Singleton and that filing of a new suit is permitted on a mortgage that contains an optional acceleration clause, whether the prior suit was ter
*950
minated, by voluntary dismissal or otherwise.]

2. If an affirmative act is necessary by the mortgagee to accelerate a mortgage, is an affirmative act necessary to decelerate?

The

Section responds:.

Unless the mortgage contract or the mortgagee’s acceleration otherwise dictates, the dismissal of the foreclosure action should be deemed a deceleration returning the parties to the status quo.

3. In light of Singleton v. Greymar Assocs., 882 So.2d 1004 (Fla.2004), is deceleration an issue or is deceleration inapplicable if a different and subsequent default is alleged?

The Section responds:

Under the terms of the mortgage in this case, Singleton dictates the conclusion that deceleration after the dismissal of a prior foreclosure action is not an issue (or is inapplicable) in a subsequent foreclosure based on a different and subsequent alleged default.

The sum of these responses is that the custom and practice nationwide and in Florida is consistent with Singleton and that a loan accelerated for one default is “decelerated” upon, dismissal (whether with or without prejudice).
In fact, after the dismissal in this case, the bank treated the loan as decelerated. Aftér the dismissal, the bank sent Beau-vais a letter demanding — not the full amount of the accelerated loan — but only the amount due from the date of default to the date of the letter. In the letter, the bank also noted that the next installment payment was still due on the next payment daté, which it provided. The bank’s demand for less than the full amount of the accelerated loan, and the bank’s notice that the next individual installment payment remained due, is consistent only with - the bank’s treatment of the loan as decelerated. Thus, the Florida Supreme Court’s ruling in Singleton and our decision here, track the actual and best practices of the industry regarding deceleration in these circumstances. There is no reason for courts to structure artificial rules regarding acceleration and deceleration at odds with how these matters are actually treated by borrowers and lenders in the marketplace.

3. The decisions of other states in no way militate against our analysis herein.

There is nothing new or novel in this mode of proceeding. And the view taken in Singleton does not make' Florida an outlier in the law. Amici, National Association of Consumer Advocates, The National Consumer Law Center, and the Jerome N. Frank Legal Services Organization at the Yale Law School submitted a joint brief on rehearing en banc, which set forth and examined the relatively few opinions from states that have considered the import of a dismissal of a foreclosure action on an accelerated note and/or the circumstances whereby the lender may reinstate a mortgage after acceleration. Of the jurisdictions that have considered the issue, few appear to have addressed whether some affirmative act is necessary to “decelerate” an accelerated loan following dismissal of a foreclosure action. -
As for the approximately fifteen states[8] where, like Florida, home loans are se *951 cured by mortgages which require judicial intervention to foreclose, the cases cited to us by these amici confirm that only one appears to have actually determined that some affirmative act following dismissal must be taken to “decelerate” an accelerated loan. See, e.g., Fed. Nat’l Mortg. Ass’n v. Mebane, 208 A.D,2d 892, 618 N.Y.S.2d 88, 89 (1994) (confirming that the intermediate appellate courts of New York- have taken the position that dismissal of a foreclosure action does not work a “deceleration” and a lender must take an affirmative step to revoke an election to accelerate). By contrast, at least one, Indiana court in a “nearly identical situation” to Singleton, has cited with approval and relied upon Singleton. . See Afolabi v. Atlantic Mart & Inv. Corp., 849 N.E,2d 1170, 1174-75 (Ind.Ct.App.2006).
As for the remainder of the cases cited to us by amici, the issue remains largely undecided. See Johnson v. Samson Constr. Corp, 704 A.2d 866, 869 (Me.1997) (mentioning the issue in dicta in a case that determined, contrary to the position taken in Singleton, that a dismissal with prejudice of a foreclosure action for failure to file a report by counsel constituted an adjudication on the merits which preéluded a subsequent foreclosure action); U.S. Bank Nat’l Ass’n v. Gullotta, 120 Ohio St.3d 399, 899 N.E.2d 987, 992-93 (2008) (similarly where the Supreme Court of Ohio mentioned the issue in dicta in a decision apparently limited to its facts and which, again contrary tó Singleton, confirmed that there each missed installment payment does not yield a new claim); Hamlin v. Peckler, No. 2005-SC-000166-MR, 2005 WL 3500784, at *2 (Ky. Dec. 22, 2005) (addressing the issue once, in an unpublished, never-again cited opinion that ultimately did not reach the merits of the issue for procedural reasons); Harrison v. Smith, 814 So.2d 42, 45-46 (La.Ct.App.2002) (addressing the issue in the context of a note with no reinstatement provision and later cited only.twice for a different proposition); Fid. Bank v. Krenisky, 72 Conn.App. 700, 807 A.2d 968, 975 (2002) (addressing the- issue in the context of an acceleration via a pre-suit letter and finding that “[bjecause the mortgage documents required no additional notice of default prior to the plaintiffs commencement of its second foreclosure action, that component of the defendants’ first special defense is legally insufficient”.).
The remaining five cases cited to us by amici come from deed-of-trust states[9] which, unlike Florida, generally require no judicial intervention to foreclose. See 55 Am.Jur.2d Mortgages § 553 (2015) (“The power of sale in a deed of trust is a contractual arrangement in a mortgage or a deed of trust which confers upon the trustee or mortgagee the ‘power’ to sell the real property mortgaged without any order of court in the event of a default.”) (Citation omitted). For the most part, these decisions do not demonstrate that Florida is an outlier on this issue because they: (1) address the issue in unpublished opinions with' no precedential value, see Kirsch v. Cranberry Fin., LLC, 178 Wash.App. 1031, 2013 WL 6835195 (Wash.Ct. App.2013), Wood v. Fitz-Simmons, No. 2 CA-VC 2008-0041, 2009 WL 580784 (Ariz.Ct.App., Mar. 6, 2009), and Cadle Co, II, *952 Inc. v. Fountain, 281 P.3d 1158 (Nev.2009); (2) are rarely if ever cited as authority, see Kirsch, 178 Wash.App. 1031 (cited once); Wood, 2009 WL 580784 (no citations), Cadle Co. II, Inc., 281 P.3d 1158 (cited twice, including by the panel in this case); (3) are governed by a statute which expressly provides, unlike in Florida, that the statute of limitations runs from the accelerated due date of the loan, see Kirsch, 178 Wash.App. 1031, 2013 WL 6835195, at *4-5; or (4) do not even address the issue. See Murphy v. HSBC Bank USA, 95 F.Supp.3d 1025 (S.D.Tex.2015) (involving an independent action challenging the mortgagee’s standing to foreclose a deed-of-trust in a non-judicial proceeding); Khan v. GBAK Props., Inc., 371 S.W.3d 347, 352 (Tex.App.-Houston [1st Dist.] 2012) (addressing whether the note holder had abandoned its prior acceleration — which had been accomplished through an acceleration letter — by continuing to accept payments on the note at a later date); Bankers Trust Co. of California, N.S. v. Baca, 141 N.M. 127, 151 P.3d 88, 90-91 (Ct.App.2006) (which stands for the rather unremarkable proposition that while res judicata did not prevent the filing of the second foreclosure action, the second action was nevertheless subject to the applicable statute of limitations that ran from the due date of the installment payment the mortgagor failed to make, as is the case with any installment contract).[10]
In short, by our estimation there is hardly a consensus in this area of the law outside of Florida and by no stretch of the imagination can Florida be labeled as an “outlier” on this point. Thus, while we do not question that several courts across the country have adopted reasoning different from that accepted in Florida, the point is our Supreme Court has rejected that different analysis. See Singleton, 882 So.2d at 1006 (disapproving Stadler's conclusion at 150 So.2d at 472, “that an election to accelerate puts all future installment payments in issue and forecloses successive suits”). Instead, citing both legal and equitable reasons, Singleton chose to conclude a subsequent default created a new right to accelerate,[11] making the dismissal of the prior action for acceleration — with or without prejudice — non-determinative of a different and subsequent claim.
A Concerns raised in the dissent.
In summary, as set out above, we reject the dissent’s concerns in the following manner:
1) Our analysis in no way perpetuates an upheaval to the contract at issue. As the dissent admits, the instant contract does not address the result of a dismissal or the rights or obligations of the parties thereafter. In fact, the dissent’s conclusion that the lender waived its right to accelerate when it failed to decelerate the loan following dismissal is in express contradiction to paragraph 12 of the mortgage and paragraph 6 of the *953 note, both of which specifically provide that any forbearance by the lender in exercising any right or remedy shall not be a waiver or preclude the exercise of that right or remedy.
2) Our analysis in no way perpetuates an upheaval to the statute of limitations. We do not suggest that the statute of limitations becomes a nullity. Rather, under Singleton, dismissal of a foreclosure action accelerating payment on one default does not bar a subsequent foreclosure action accelerating payment on a later default if the subsequent default occurred within five years of the subsequent action and acceleration.
3) Our analysis in no way perpetuates an upheaval to long-standing law oh the effect of a dismissal. Rather, as previously stated, the law has been and continues to be that an action dismissed without a final adjudication on the merits leaves the parties as though the suit had never been filed, which is no more than exactly the conclusion we reach herein.
4) Our conclusion in no way results in a cataclysmic change in Florida law or the way in which lenders proceed against defaulting borrowers. Rather, as Fannie Mae, Freddie Mac, and the Florida Bar confirm, our .analysis is in keeping with the understanding of members of the mortgage industry and those who represent both borrowers and lenders.
5) Our conclusion is not the result of any perceived “moral imperative” or quest for equity run amuck. Rather, it is the result of what the Supreme Court has said, what the contract provides, and what a dismissal does.

S. Conclusion.

In sum, after the 2010 dismissal without prejudice of the predecessor mortgagee’s foreclosure action, the parties returned to the status quo that existed prior to the filing, of the dismissed complaint. As a matter of law, the bank’s 2012 foreclosure action, based on breaches that occurred after the breach that triggered the first complaint, was not barred by the statute of limitations. So says Singleton, as well as the terms of the parties’ mortgage and note. This resolution is in keeping with the long held practices of the Florida mortgage industry and moreover, best protects the interests of both mortgagees, who are not left with nullified mortgages, but also mortgagors, who by the terms of their mortgages, are permitted any time before judgment, to become current on their mortgage obligation.
Additionally, as should be apparent from the. analysis outlined above, we likewise reverse that portion of the, trial court’s order which declared that the mortgage was null and void, canceled same, and quieted title to the property in favor of the Association. The Legislature, by .its express language, provided that the. mortgage lien under section 95.281(l)(a) would terminate five years after a maturity date that can be determined from the face of a recorded document. The face of the recorded mortgage in the instant case reveals a maturity date of March 1, 2036. Therefore, and pursuant to section 95.281(l)(a), the mortgage lien remains valid until March 1, 2041, five years from the date of maturity as reflected in the recorded mortgage securing the obligation.
Accordingly, we reverse the order under review and remand this cause to the trial court for further proceedings consistent with this opinion.
SUAREZ, C.J., and ROTHENBERG, LAGOA, FERNANDEZ and LOGUE, JJ., concur.

. American Home Mortgage Servicing, Inc. v. Harry Beauvais et. al., Case No 07-02054 CA 10.

. See generally In re Rogers Townsend & Thomas, PC, — N.C.App. -, 773 S.E.2d 101, 106 (2015), referring to Singleton's, conclusion that a subsequent and separate alleged default’created a new and independent right in the lender to accelerate payment on a note in a subsequent foreclosure action, and concluding:
We recognize that this view of foreclosure actions involving acceleration on a note is not universal. See U.S. Bank Natl. Assn. v. Gullotta, 120 Ohio St.3d 399, 405, 899 N.E.2d 987, 992 (2008) (holding Ütat each missed payment under a promissory note and mortgage did not give rise to a new claim because "[o]nce [the borrower] defaulted and [the lender] invoked the acceleration clause of the note, the ... obligations to pay each installment merged into one obligation to pay the entire balance on the note”). Even so, Singleton's pronouncement that an "acceleration and foreclosure [action] predicated upon subsequent and different defaults presents] a separate and distinct” claim expresses the better reasoned view. 882 So.2d at 1007.

. This analysis of Singleton neither undermines nor contradicts prior Florida Supreme Court or other Florida precedent, including the Supreme Court's decision in Travis Co. v. Mayes, 160 Fla. 375, 36 So.2d 264, 265-66 (1948). Travis does no more than stand for the unremarkable proposition that when considering a mortgage that contains an automatic acceleration clause "[t]he law is well settled that the Statute of Limitations begins to run against a mortgage at the time the right to foreclose accrues. The rule is also settled that when a mortgage in terms declares the entire indebtedness due upon default of eer- *943 tain of its provisions or within a reasonable time thereafter, the Statute of Limitations begins to run immediately [when] the default takes place or the time intervenes,” Travis, 36 So.2d at 265 (citations omitted); see also Spencer v. EMC Mortg. Corp., 97 So.3d 257, 260 (Fla. 3d DCA 2012) (holding that a foreclosure action filed more than five years after acceleration of the entire debt upon default was barred by the statute of limitations); Greene v. Bursey, 733 So.2d 1111, 1115 (Fla. 4th DCA 1999) (holding that the statute of limitations began to run in that case from the date of maturity because the lender had not sought to accelerate and foreclose following an earlier default); Monte v. Tipton, 612 So.2d 714, 716 (Fla. 2d DCA 1993) (stating the general principle that the statute of limitations on a mortgage foreclosure action does not begin to run until the last payment is due unless the mortgage contains an acceleration clause which the mortgagee has chosen, to exercise); accord Locke v. State Farm Fire & Cas. Co., 509 So.2d 1375, 1377 (Fla. 1st DCA 1987); see also Smith v. F.D.I.C., 61 F.3d 1552, 1561-62 (11th Cir.1995), and Harmony Homes, Inc. v. U.S. on Behalf of Small Bus. Admin., 936 F.Supp. 907, 911 (M.D.Fla.1996) (similarly relying on Tipton, Locke, and Conner v. Coggins, 349 So.2d 780 (Fla. 1st DCA 1977), for the general proposition that the statute of limitations begins to run on a mortgage foreclosure action when the last payment is due except when the mortgage includes an acceleration clause). The decision in Singleton gives irise to no inconsistency in the law, and does nothing to change when the clock starts ticking for statute of limitations purposes. Rather, Singleton provides for new accelerations based on subsequent defaults— to which, of course, statutory limitations periods apply.

. The purpose of these entities, we are advised, is to assure greater access to mortgage credit while promoting liquidity, stability and affordability in the residential real estate market.

. As these amici note, “after dismissal, the lender no longer has any claim to the fully-accelerated amount, only the past-due payments.” Were this not true, "a lender that receive[d] a payment from a reinstating' borrower for less than the fully-accelerated ámount after accelerating the loan could simply return that payment and proceed with its foreclosure. But the Reinstatement Provision [paragraph 19] prohibits that." Moreover, we are advised, if lenders were obligated to take some affirmative act to "decelerate” following dismissal, a lender could unilaterally nullify the reinstatement provision, refuse to decelerate, and obligate the borrower to pay the entire accelerated amount.

. The Business Law Section of The Florida Bar is comprised of almost 6,000 Bar members who routinely represent both lenders and borrowers.

. The Real Property Probate & Trust Law Section of The Florida Bar is comprised of over 10,000 Bar members who practice in the áreas of real estate, guardianship, trust and . estate law, and who are dedicated to serving all Florida lawyers and the public in these fields of practice. The Section produces educational materials and seminars, assists the public pro bono, drafts legislation, drafts rules of procedure, and occasionally serves as a friend of the court to assist on issues related to their fields of practice.

. Connecticut: Conn. Gen.Stat. §§ 49-1 to 49-3 lv.; Delaware: Del. Code Ann. tit. 10 §§ 5061 through 5067; Illinois: 735 Ill. Comp. Stat. §§ 5/15-1501 to 5/15-1605; Indiana: Ind.Code §§ 32-30-10-1 to 32-30-10-14; Kansas: Kan. Stat. Ann. § 60-2410; Kentucky: Ky.Rev.Stat, Ann. § 426.005; Louisiana: La.Code Civ. Proc. Ann. arts. 3721 to *951 3723; Maine: Me.Rev.Stat. Ann. tit. 14, §§ 6321 to 6326; New Jersey: N.J.-Stat. Ann. §§ 2A:50-1 to 2A:50-73; New York: N.Y. Real Prop. Acts. Law §§ 1301 to 1391; North Dakota: N.D. Cent.Code §§ 32-19-01 to 32-19-41; Ohio: Ohio Rev.Code Ann. § 2323.07; Pennsylvania: 35 Pa. Stat. Ann. §§ 1680.402c to 1680.409c; South Carolina: S.C;Code Ann. §§ 29-3-610 to 29-3-790.

. We note that there are a handful of states which allow both judicial and non-judicial foreclosure.

. Because this case did not involve an acceleration by letter, this opinion in no way addresses what, if any, notice of deceleration would be required in such an instance. In that same vein, that non-involvement of judicial process may explain why deed-of-trust states may reach a different conclusion as to the requirement of notice of deceleration, as without court participation, the mortgagor may rightly need some notice that acceleration is no longer at issue.

. The Court having spoken, it is our obligation to follow that instruction. See Hoffman v. Jones, 280 So.2d 431, 434 (Fla.1973) (“To allow a District Court of Appeal to overrule controlling precedent of this Court would be to create chaos and uncertainty in the judicial forum, particularly at the trial level").