LEWIS, J.,
concurring in result only.
I am troubled by the expansion of Singleton v. Greymar Associates, 882 So.2d 1004 (Fla.2004), to potentially any case involving successive foreclosure actions. Other courts in this State have already broadly applied Singleton—a decision involving res judicata and dismissal with prejudice—to cases that were either dismissed for lack of prosecution or voluntarily dismissed by the note-holder, as well as to cases that concern the statute of limitations, without careful consideration of the procedural distinctions of each case. E.g., In re Anthony, 550 B.R. 577 (M.D.Fla. 2016); Dorta v. Wilmington Tr. Nat’l Ass’n, 2014 WL 1152917 (M.D.Fla.2014); Romero v. SunTrust Mortg., Inc., 15 F.Supp.3d 1279 (S.D.Fla.2014); Kaan v. Wells Fargo Bank, N.A., 981 F.Supp.2d 1271 (S.D.Fla.2013); Evergrene Partners, Inc. v. Citibank, N.A., 143 So.3d 954 (Fla. 4th DCA 2014); see also In re Rogers Townsend & Thomas, PC, 241 N.C.App. 247, 773 S.E.2d 101, 105-06 (2015) (relying on Singleton in a case involving previous voluntary dismissals and the statute of limitations). Today’s decision will only continue that expansion, which I fear will come at the cost of established Florida law and Floridians who may struggle with both the costs of owning a home and uncertain behavior by lenders. I therefore respectfully concur in result only.
*1023 At its narrowest, Singleton simply held that “when a second and separate action for foreclosure is sought for a default that involves a separate period of default from the one alleged in the first action, the case is not necessarily barred by res judicata.” 882 So.2d at 1006-07 (emphasis supplied). However, as has been noted elsewhere, Singleton left several matters unanswered:
[T]he Supreme Court omitted explanation of 1) what constitutes a valid new default after the initial round of default, acceleration, foreclosure filing, and dismissal; 2) how the fact-finder below determines that a valid new default has occurred; and 3) what conditions constitute valid new default, including whether the lender must reinstate the original note and mortgage terms in the interim or serve a second notice of intent to accelerate. Moreover, the court in no way addressed the effect of the involuntary dismissal on the statute of limitations.
Andrew J. Bernhard, Deceleration: Restarting the Expired Statute of Limitations in Mortgage Foreclosures, Fla. B.J., Sept.-Oct.2014, at 30, 32. Given the procedural posture of this matter and the relatively sparse record before this Court, the decision today fails to address eviden-tiary concerns regarding how to determine the manner in which a mortgage may be reinstated following the dismissal of a foreclosure action, as well as whether a valid “subsequent and separate” default occurred to give rise to a new cause of action. See Singleton, 882 So.2d at 1008. Instead of addressing these concerns, the Court flatly holds that the dismissal itself—for any reason—“decelerates” the mortgage and restores the parties to their positions prior to the acceleration without authority for support. Majority op. at 1012.
In this case, there is no evidence contained in the record before this Court to show whether the parties tacitly agreed to a “de facto reinstatement” following the dismissal of the previous foreclosure action.[7] Further, despite the assumption of the majority of the Court to the contrary, the mortgage itself did not create a right to reinstatement following acceleration and the dismissal of a foreclosure action. The contractual right to reinstatement under the terms of this mortgage existed only under specific conditions,[8] which do *1024 not appear to have been satisfied in the record before this Court. Parties, particularly those as sophisticated as the banks and other lenders that routinely engage in such litigation, should be required to present evidence that the mortgage was actually decelerated and reinstated, rather than require our courts to fill in the blank and assume that deceleration automatically occurred upon dismissal of a previous foreclosure action.
Instead, I find myself more closely aligned with the dissenting opinion of Judge Scales in Beauvais, 188 So.3d at 954 (Scales, J., dissenting). A majority of the en banc Third District Court of Appeal reached the same conclusion as the majority of this Court does today regarding very similar facts. By contrast, Judge Scales, joined by three of his colleagues, raised several concerns that arise from the conclusion that a mortgage is automatically decelerated and reinstated following the dismissal of a foreclosure action for any reason.
First, Judge Scales pointed out that the mortgage in Beauvais, like the mortgage in this case, created the borrower’s right to reinstatement only under specific conditions, which did not include dismissal of a prior foreclosure action. Id. at 956-57 (“Neither the note nor the mortgage contain any provision reinstating the installment nature of the note if, after acceleration, a lender foreclosure action is dismissed.”). Further reviewing the clear terms of the mortgage, Judge Scales explained that the mortgage ceased to be an installment contract upon the exercise of the lender’s right to acceleration. Id at 961-62. Thus, the conclusion that a court’s dismissal of a foreclosure action itself can end acceleration and reinstate the mortgage ignores basic principles of Florida contract law:
The majority opinion rewrites the parties’ note and mortgage to create a reinstatement provision—i.e., reinstating the installment nature of the note, as if acceleration never occurred, upon any dismissal of any lawsuit—that the parties did not include when drafting their documents. Singleton does not say this; the parties’ contract documents certainly do not say this; and Florida law is repugnant to the majority’s insertion of a provision into the parties’ private contract that the parties themselves most assuredly omitted. [FN. 23]
[FN. 23]: Brooks v. Green, 993 So.2d 58, 61 (Fla. 1st DCA 2008) (holding that a court is without authority to *1025 rewrite a clear and unambiguous contract between parties).
Id. at 963.
Moreover, Judge Scales cogently explained that the overbroad construction of Singleton will undermine its limited holding. Singleton indicated that “an adjudication denying acceleration and foreclosure” should not bar a successive foreclosure predicated upon a “subsequent and separate alleged default.” 882 So.2d at 1007, 1008. Yet, under the majority decisions of the Third District and this Court, any dismissal of a foreclosure action can support a successive foreclosure action. See Beauvais, 188 So.3d at 963-64 (Scales, J., dissenting). The form dismissal in Beauvais should not constitute an “adjudication denying acceleration and foreclosure,” which could, at least according to Singleton, restore the parties to their respective pre-acceleration positions. Id. at 964 (quoting Singleton, 882 So.2d at 1007). In light of the even more vague dismissal at issue in this case, I agree with Judge Scales’ warning that “[w]e should be reluctant to hold that a trial court’s form dismissal order visits upon the borrower and lender a host of critical, yet unarticulated, adjudications that fundamentally change the parties’ contractual relationship and are entirely unsupported by the existing law or by the record below.” Id. at 965.
Finally, the expansion of Singleton’s holding that res judicata “does not necessarily” bar the filing of successive foreclosure actions to the statute of limitations ignores critical distinctions between these two doctrines, at a serious cost to the statute of limitations and the separation of powers. As long recognized in this State, res judicata is a doctrine of equity not to “be invoked where it would defeat the ends of justice.” Id. at 967 n. 31 (citing State v. McBride, 848 So.2d 287, 291 (Fla.2003); Aeacus Real Estate Ltd. P’ship v. 5th Ave. Real Estate Dev., Inc., 948 So.2d 834 (Fla. 4th DCA 2007)); see also Singleton, 882 So.2d at 1008 (citing deCancino v. E. Airlines, Inc., 283 So.2d 97, 98 (Fla.1973)). However, “equity follows the law”; therefore, equitable principles are subordinate to statutes enacted by the Legislature, including the statute of limitations. May v. Holley, 59 So.2d 636 (Fla.1952); Beauvais, 188 So.3d at 967-68 (Scales, J., dissenting) (citing Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla.1952); Cragin v. Ocean & Lake Realty Co., 101 Fla. 1324, 133 So. 569, 573-74 (1931)). This untenable extension of an equitable, judicial doctrine into an area of law expressly governed by legislative action veers perilously close to violating the separation of powers. Nonetheless, the majority opinion of this Court fails to recognize these concerns and justifies the imposition of Singleton’s equitable focus onto the statute of limitations by simply reviewing the decisions of federal and Florida courts that have reached this same conclusion without acknowledging the critical distinctions between res judica-ta and the statute of limitations.
I recognize the concern raised by this Court and others regarding the need to avoid encouraging delinquent borrowers from abusing the lending process by remaining in default after an initial foreclosure action is dismissed. See Singleton, 882 So.2d at 1008; see also Fairbank’s Capital Corp. v. Milligan, 234 Fed.Appx. 21, 24 (3d Cir.2007) (relying on Singleton and seeking to avoid “eneourag[ing] a delinquent mortgagor to come to a settlement with a mortgagee on a default in order to later insulate the mortgagor from the consequences of a subsequent default”). Nonetheless, these legitimate policy concerns should not outweigh the established law of this State. In light of the narrow holding of Singleton, I fear that its expansion today to a case involving a previous dismissal (presumably) without prej *1026 udice and no clear reinstatement of the mortgage terms in either the note or the facts of this limited record will lead to inequitable results. Just as the courts should not encourage mortgage delinquency, so too should they avoid encouraging lenders from abusing Florida law and Floridians by “retroactively reinstating” mortgages after many of those lenders initially slept on their own rights to seek foreclosures. See Bernhard, supra, at 1023. Therefore, I concur in result only.

. Moreover, the precise nature of the dismissal in this case is even more uncertain than the mortgage in Beauvais, which was dismissed without prejudice. See Deutsche Bank Tr. Co. Americas v. Beauvais, 188 So.3d 938, 964 (Fla. 3d DCA 2016) (Scales, J., dissenting). The trial court below dismissed the first foreclosure action after indicating that it had informed the parties that "[flailure of the parties ... to appear in person [at the case management conference] may result in the case being dismissed without prejudice.” Order of Dismissal, U.S. Bank Nat'l Ass’n v. Bartram, No. CA06-428 (Fla. 7th Cir.Ct. May 5, 2011) (emphasis added). However, the trial court's order did not explicitly state whether this dismissal was with or without prejudice. Id. ("The Complaint to Foreclose Mortgage ... is hereby dismissed.”). Further complicating the matter, the Fifth District below stated that this dismissal was with prejudice, but summarily determined “that the distinction is not material for purposes of the issue at hand.” U.S. Bank Nat’l Ass’n v. Bartram, 140 So.3d 1007, 1013 n. 1 (Fla. 5th DCA 2014).

. The mortgage note provides the following right to reinstatement:
Borrower’s Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower’s right to reinstate; or (c) entry of a judgment enforc *1024 ing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender’s interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender’s interest in the Property and rights under this Security Instrument, and Borrower’s obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement and expenses in one or more of the following forms, as selected by Lender; (a) cash; (b) money order; (c) certified check, bank check, treasurer’s check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.
See majority op. at 1013-14.