PARIENTE, J.
The issue before the Court involves the application of the five-year statute of limitations to “[a]n action to foreclose a mortgage” pursuant to section 95.11(2)(c), Florida Statutes (2012).[1] The Fifth District *1012 Court of Appeal relied . on this. Court’s reasoning in Singleton v. Greymar Associates, 882 So.2d 1004 (Fla.2004), rejecting that the statute of limitations had expired. Because of the importance of this issue to both lenders and borrowers, the Fifth District certified to this Court a question of great public importance, which we have rephrased to acknowledge that the note in this case is a standard residential mortgage, which included a contractual right to reinstate:
DOES ACCELERATION OF PAYMENTS DUE UNDER A RESIDENTIAL NOTE AND MORTGAGE WITH A REINSTATEMENT PROVISION IN A FORECLOSURE ACTION THAT WAS DISMISSED PURSUANT TO RULE 1.420(B), FLORIDA RULES OF CIVIL PROCEDURE, TRIGGER APPLICATION OF THE STATUTE OF LIMITATIONS TO PREVENT A SUBSEQUENT FORECLOSURE ACTION BY THE MORTGAGEE BASED ON PAYMENT DEFAULTS OCCURRING SUBSEQUENT TO DISMISSAL OF THE FIRST FORECLOSURE SUIT?
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
In this case, it is uncontroverted that the borrower, Lewis Brooke Bartram, also referred to as the mortgagor, stopped making payments on his $650,000 mortgage and note, both before and after the foreclosure action was brought and subsequently dismissed. For the reasons set forth in this opinion, we answer the rephrased certified question in the negative and hold, consistent with our reasoning in Singleton, that the mortgagee, also referred to as the lender, was not precluded by the statute of limitations from filing a subsequent foreclosure action based on payment defaults occurring subsequent to the dismissal of the first foreclosure action, as long as the alleged subsequent default occurred within five years of the subsequent foreclosure action. When a mortgage foreclosure action is involuntarily dismissed pursuant to Rule 1.420(b), either with or without prejudice, the effect of the involuntary dismissal is revocation of the acceleration, which then reinstates the mortgagor’s right to continue to make payments on the note and the right of the mortgagee, to seek acceleration and foreclosure based on the mortgagor’s subsequent defaults. Accordingly, the statute of limitations does not continue to run on the amount due under the note and mortgage.[2]
Absent a contrary provision in the residential note and mortgage, dismissal of the foreclosure action against the mortgagor has the effect of returning the parties to their pre-foreclosure complaint status, where the mortgage remains an installment loan and the mortgagor has the right to continue to make installment payments without being obligated to pay the entire amount due under the note and mortgage. Accordingly, we approve the Fifth District’s opinion in U.S. Bank National Association v. Bartram, 140 So.3d 1007 (Fla. 5th DCA 2014), and answer the rephrased certified question in the negative.
FACTS AND PROCEDURAL BACKGROUND
On November 14, 2002, Petitioners Lewis Bartram (“Bartram”) and his then-wife *1013 Patricia Bartram[3] (“Patricia”), purchased real property in St. Johns County, Florida (the “Property”). Less than a year later, Patricia filed for dissolution of the couple’s marriage, which was officially dissolved on November 5, 2004. Pursuant to a prenuptial agreement the Bartrams had previously executed, the divorce court ordered Bar-tram to purchase Patricia’s interest in the Property.
In order to comply with the divorce court’s order, on February 16, 2005, Bar-tram obtained a $650,000 loan through Finance America, LLC, secured by a mortgage on the Property in favor of Mortgage Electronic Registration Systems, Inc., in its capacity as nominee for Finance America (the “Mortgage”). Finance America subsequently assigned the Mortgage to Respondent, U.S. Bank National Association (the “Bank”), as trustee and assignee. A day later, on February 17, 2005, Bar-tram executed a second mortgage (the “Second Mortgage”) to Patricia as security for a second mortgage note of $120,000.
The Mortgage was a standard residential form mortgage and required the lender to give the borrower notice of any default and an opportunity to cure before the mortgagee could proceed against the secured property in a judicial foreclosure action. Specifically, paragraph 22 of the Mortgage was an optional acceleration clause and provided that the lender was required to give the borrower notice that failure to cure the default “may result in acceleration of the sums secured” by the mortgagee and foreclosure of the property:
Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower’s breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys’ fees and costs of title evidence.
(Emphasis added).
In addition to providing optional acceleration and foreclosure as a remedy for default, paragraph 19 of the Mortgage also granted the borrower a right to reinstate the note and Mortgage after acceleration if certain conditions were met, including paying the mortgagee all past defaults and other related expenses that would be due “as if no acceleration had occurred”:
Borrower’s Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right *1014 to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower’s right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys’ fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender’s interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender’s interest in the Property and rights under this Security Instrument, and Borrower’s obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer’s check or cashier’s check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.[4]
(Emphasis added). The designated maturity date of the note was March 1, 2035.
On January 1, 2006, Bartram stopped making payments on the Mortgage, and never made payments on the Second Mortgage. Around the same time, Bartram also stopped paying homeowners’ association assessments to the Plantation at Ponte Vedra, Inc. (the “HOA”), the homeowners’ association of the development where the Property was located. The HOA subsequently placed a lien on the Property for nonpayment of the HOA assessments.
On May 16, 2006, the Bank filed a complaint to foreclose the Mortgage based on Bartram’s failure to make payments due from January of that year to the date of the complaint. The foreclosure complaint stated that all conditions precedent to the acceleration of the Mortgage and to the foreclosure of the Mortgage had been fulfilled or had occurred, and declared the full amount payable under the note and Mortgage to be due. Nearly five years later, on May 5, 2011, the foreclosure action was involuntarily dismissed after the Bank failed to appear at a case management conference.[5] The Bank did not appeal the dismissal.
Following the dismissal of the foreclosure action, Bartram filed a motion to cancel the promissory note and release the lien on the mortgage. The trial court denied the motion in an order dated August *1015 29, 2011, citing to its lack of jurisdiction in the matter since the May 5, 2011, involuntary dismissal under Rule 1.420(b) “was an adjudication on the merits and the case has been closed.”
Approximately a year later, after the dismissal of the foreclosure action and almost six years after the Bank filed its foreclosure complaint, Bartram filed a crossclaim against the Bank in a separate foreclosure action Patricia had brought against Bartram, the Bank, and the HOA. Bartram’s crossclaim sought a declaratory judgment to cancel the Mortgage and to quiet title to the Property, asserting that the statute of limitations barred the Bank from bringing another foreclosure action.[6]
Bartram then moved for summary judgment on his crossclaim. The trial court found no genuine issue as to any material fact, granted summary judgment, quieted title in Bartram, found the Bank had no further ability to enforce its rights under the note and Mortgage that were the subject matter of the Bank’s dismissed foreclosure action, and cancelled the note and Mortgage. In doing so, the trial court released the Bank’s lien on the Property. The Bank subsequently filed a motion for rehearing, and after the trial court denied the Bank’s motion, appealed to the Fifth District.
Before the Fifth District, the Bank relied on this Court’s decision in Singleton for its position that the trial court’s dismissal “nullified [the Bank’s] acceleration of future payments; accordingly, the cause of action on the accelerated payments did not accrue and the statute of limitations did not begin to run on those payments, at least until default occurred on each installment.” Bartram, 140 So.3d at 1009-10. The Bank acknowledged, however, that it could not seek to foreclose the Mortgage based on Bartram’s defaults prior to the first foreclosure action, but could seek foreclosure based on defaults occurring subsequent to the dismissal of the first foreclosure action. Id. at 1009. Bartram contended on appeal, joined by Patricia and the HOA, “that the cause of action for default of future installment payments accrued upon acceleration, thus triggering the statute of limitations clock to run, and because the Bank did not revoke its acceleration at any time after the dismissal, the five-year statute of limitations period eventually expired, barring the Bank from bringing another suit [to foreclose the Mortgage].” Id. at 1010 (citations omitted).
The Fifth District agreed with the Bank and held that if a “new and independent right to accelerate” exists in a res judicata analysis under Singleton, 882 So.2d at 1008, then “there is no reason it would not also exist vis-á-vis a statute of limitations issue.” Id. at 1013. The Fifth District reasoned that a “new and independent right to accelerate” would mean that each new default would present new causes of action, regardless of whether the payment due dates had been accelerated in the first foreclosure action. Id. at 1013-14. Based on Singleton, the Fifth District explained, “a default occurring after a failed foreclosure attempt creates a new cause of action for statute of limitations purposes, even where acceleration had been triggered and the first case was dismissed on its merits.” Id. at 1014. The Fifth District accordingly reversed the trial court’s judgment, remanded the case to the trial court, and certified the question of great public importance we now address.
ANALYSIS
The rephrased certified question involves a pure question of law. There *1016 fore, the standard of review is de novo. See Christensen v. Bowen, 140 So.3d 498, 501 (Fla.2014). In answering the rephrased certified question, we begin by-reviewing this Court’s decision in Singleton, which the Fifth District and most courts throughout the state have held to be determinative of the rephrased certified question. We then discuss the cases, both state and federal, that concern successive mortgage foreclosure actions in a statute of limitations context decided after Singleton. In doing so, we examine whether our analysis in Singleton, which was decided on res judicata grounds, extends to the statute of limitations context present in this case. We then discuss the significance to our analysis, if any, of the involuntary dismissal of the foreclosure action pursuant to Rule 1.420(b) and the effect of the Mortgage’s reinstatement provision. Based on this analysis, we conclude by answering the rephrased certified question in the negative and approving the Fifth District’s decision in Barbrnm.
I. Singleton v. Greymar Associates
In Singleton, a mortgagee brought two consecutive foreclosure actions against a mortgagor. 882 So.2d at 1005. The first foreclosure action was based on the mortgagor’s failure to make mortgage payments from September 1999 to February 2000 and “sought to accelerate the entire indebtedness against” the mortgagor. Id. & n. 1. The first foreclosure action was dismissed with prejudice by the trial court after the mortgagee failed to appear at a case management conference. Id. After this involuntary dismissal, the mortgagee filed a second foreclosure action based on a separate default that occurred when the mortgagor failed to make mortgage payments starting in April 2000. Id. at 1005. The mortgagor contended that the dismissal of the first foreclosure action barred relief in the second foreclosure action, but the trial court rejected this argument and entered a summary final judgment of foreclosure for the mortgagee. Id.
The mortgagor appealed, and “the Fourth District affirmed the circuit court’s decision, finding that ‘[e]ven though an earlier foreclosure action filed by appellee was dismissed with prejudice, the application of res judicata does not bar this lawsuit. The second action involved a new and different breach.’ ” Id. (citing Singleton v. Greymar Assocs., 840 So.2d 356, 356 (Fla. 4th DCA 2003)). Singleton petitioned this Court for jurisdiction, citing an express and direct conflict with Stadler v. Cherry Hill Developers, Inc., 150 So.2d 468 (Fla. 2d DCA 1963). Id.
Stadler also involved two successive foreclosure actions where the first foreclosure action had been dismissed with prejudice. 150 So.2d at 469. The mortgagee brought a second foreclosure action that was identical except for alleging a different period of default. That action was successful, and the mortgagor appealed. The Second District reversed the judgment of foreclosure entered on the basis of res judicata and concluded that the “election to accelerate put the entire balance, including future installments at issue.” Id. at 472. Therefore, even though different periods of default were asserted, the “entire amount due” was the same and thus the “actions are identical.” Id. Accordingly, the Second District concluded that res ju-dicata barred the second foreclosure action. Id. at 473.
After analyzing the position of the two appellate courts, this Court agreed with the Fourth District that “when a second and separate action for foreclosure is sought for a default that involves a separate period of default from the one alleged in the first action, the case is not necessarily barred by res judicata.” Singleton, 882 So.2d at 1006-07. In support, we cited *1017 with approval the Fourth District’s reasoning in Capital Bank v. Needle, 596 So.2d 1134 (Fla. 4th DCA 1992):
Our reading of the case law set out above leads us to conclude that a final adjudication in a foreclosure action that also prays for a deficiency judgment on the underlying debt may, but does not necessarily, bar a subsequent action on the debt. For instance, if the plaintiff in a foreclosure action goes to trial and loses on the merits, we do not believe such plaintiff would be barred from filing a subsequent foreclosure action based upon a subsequent default. The adjudication merely bars a second action relitigating the same alleged default. A dismissal with prejudice of the foreclosure action is tantamount to a judgment against the mortgagee. That judgment means that the mortgagee is not entitled to foreclose the mortgage. Such a ruling moots any prayer for a deficiency, since a necessary predicate for a deficiency is an adjudication of foreclosure. There was no separate count in the Capital Bank complaint seeking a separate recovery on the promissory note alone.
Accordingly, we do not believe the dismissal of the foreclosure action in this case barred the subsequent action on the balance due on the note.
Singleton, 882 So.2d at 1007 (quoting Capital Bank, 596 So.2d at 1138) (emphasis added).
Our holding in Singleton was based on the conclusion that an “acceleration and foreclosure predicated upon subsequent and different defaults present a separate and distinct issue” than a foreclosure action and acceleration based on the same default at issue in the first foreclosure action. Id. Indeed, we cited with approval another decision of the Fourth District, Olympia Mortgage Corp. v. Pugh, 774 So.2d 863, 866 (Fla. 4th DCA 2000), which held—contrary to the Second District’s conclusion in Stadler—-that an acceleration of debt in a mortgage foreclosure action did not place future installments- at issue. As we explained, the unique nature of a mortgage compelled this result:
This seeming variance from the traditional law of res judicata rests upon a recognition of the unique nature of the mortgage obligation and the continuing obligations of the parties in that relationship. For example, we can envision many instances in which the application of the Stadler decision would result in unjust enrichment or other inequitable results. If res judicata prevented a mortgagee from acting on a subsequent default even after an earlier claimed default could not be established, the mortgagor would have no incentive to make future timely payments on the note. The adjudication of the earlier default would essentially insulate her from future foreclosure actions on the note— merely because she prevailed in the first action. Clearly, justice would not be served if the mortgagee was barred from challenging the subsequent default payment solely because he failed to prove the earlier alleged default.
Singleton, 882 So.2d at 1007-08 (emphasis added).
Our recognition in Singleton that each new default presented a separate cause of action was based upon the acknowledgement that because foreclosure is an equitable remedy, “[t]he ends of justice require that the doctrine of res judicata not be applied so strictly so as to prevent mortgagees from being able to challenge multiple defaults on a mortgage.” Id. at 1008. Thus, the failure of a mortgagee to foreclose the mortgage based on an alleged default did not mean the mortgagor had automatically and successfully defeated his *1018 or her obligation to make continuing payments on the note.
II. Mortgage Foreclosure Cases Post-Singleton: Application to Statute of Limitations Context
In cases concerning mortgage foreclosure actions, since our decision in Singleton, both federal and state courts have applied our reasoning in Singleton in the statute of limitations context and have concluded that because of “the unique nature of the mortgage obligation and the continuing obligations of the parties in that relationship,” an “adjudication denying acceleration and foreclosure” does not bar subsequent foreclosure actions based on separate and distinct defaults. See id. at 1007. As the Fourth District explained, under Singleton, a “new default, based on a different act or date of default not alleged in the dismissed action, creates a new cause of action.” Star Funding Sols., LLC v. Frondes, 101 So.3d 403 (Fla. 4th DCA 2012). That is because, as the First District has also explained, this Court’s “analysis in Singleton recognizes that a note securing a mortgage creates liability for a total amount of principal and interest, and that the lender’s acceptance of payments in installments does not eliminate the borrower’s ongoing liability for the entire amount of the indebtedness.” Nationstar Mortg., LLC v. Brown, 175 So.3d 833, 834 (Fla. 1st DCA 2015).
Other district courts of appeal have similarly applied our reasoning in Singleton to determine that the five-year statute of limitations did not bar a subsequent foreclosure action when the mortgagee had brought an initial foreclosure action that accelerated all sums due under the mortgage and note, on that same mortgage outside the statute of limitations window. For instance, in Deutsche Bank Trust Co. Americas v. Beauvais, 188 So.3d 938, 947 (Fla. 3d DCA 2016), the Third District concluded that because the subject mortgage’s reinstatement provision granted the mortgagor the right to avoid foreclosure by paying only the past due defaults, that “despite acceleration of the balance due and the filing of an action to foreclose, the installment nature of a loan secured by such a mortgage continued] until a final judgment of foreclosure [was] entered and no action [was] necessary to reinstate it via a notice of ‘deceleration’ or otherwise.”
With reasoning similar to Beauvais, in Evergrene Partners, Inc. v. Citibank, N.A., 143 So.3d 954, 955 (Fla. 4th DCA 2014), a mortgagor challenged, on statute of limitations grounds, a second foreclosure action brought by the mortgagee when the mortgagee had voluntarily dismissed a prior foreclosure action based on a separate default. The Fourth District held that the mortgage was still enforceable because “the statute of limitations ha[d] not run on all of the payments due pursuant to the note,” specifically those payments missed after the initial alleged default. Id. In reaching this conclusion, the Fourth District relied on Singleton, and emphasized that “[w]hile a foreclosure action with an acceleration of the debt may bar a subsequent foreclosure action based on the same event of default, it does not bar subsequent actions and acceleration based upon different events of default.” Id. Similarly, in PNC Bank, N.A. v. Neal, 147 So.3d 32, 32 (Fla. 1st DCA 2013), the First District held that an initial foreclosure action that sought acceleration and was dismissed with prejudice did not bar the mortgagee from “instituting a new foreclosure action based on a different act or a new date of default not alleged in the dismissed action.”
Federal district courts in the state have also applied Singleton to dismiss claims seeking cancellation of a mortgage and note that are premised on the expiration of the statute of limitations after an initial *1019 foreclosure action that sought acceleration was dismissed. In Dorta v. Wilmington Trust National Ass’n, No. 5:13-cv-185-Oc-10PRL, 2014 WL 1152917 (M.D.Fla. Mar. 24, 2014), the mortgagor brought an action seeking cancellation of the mortgage based on the expiration of the statute of limitations where the mortgagee previously accelerated payments and brought a foreclosure action that was ultimately dismissed without prejudice more than five years prior. Id. at *1-2. In dismissing the mortgagor’s complaint, the federal district court held that even when the initial foreclosure action is dismissed without prejudice, “where a mortgagee initiates a foreclosure action and invokes its right of acceleration, if the mortgagee’s foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file later foreclosure actions ... so long as they are based on separate defaults.” Id. at *6.
Similarly, in Torres v. Countrywide Home Loans, Inc., No. 14-20759-CIV, 2014 WL 3742141, at *1 (S.D.Fla. July 29, 2014), the federal district court dismissed a complaint that sought a declaration that the statute of limitations barred foreclosing on a mortgage after a prior foreclosure action where the mortgagee had sought acceleration of the note that had been dismissed. Relying on Singleton, the court noted that “each payment default that is less than five years old creates a basis for a subsequent foreclosure or acceleration action.” Id. at *4; see also Romero v. SunTrust Mortg., Inc., 15 F.Supp.3d 1279 (S.D.Fla.2014) (holding that the installment nature of the note remained in effect after dismissal of a foreclosure action where the mortgagee had sought acceleration); Kaan v. Wells Fargo Bank, N.A., 981 F.Supp.2d 1271 (S.D.Fla.2013) (same).
We agree with the reasoning of both our appellate courts and the federal district courts that our analysis in Singleton equally applies to the statute of limitations context present in this case. As the Fifth District concluded, “[i]f a ‘new and independent right to accelerate’ exists in a res judicata analysis, there is no reason it would not also exist vis-á-vis a statute of limitations issue.” Bartram, 140 So.3d at 1013. This conclusion follows from our prior reasoning that a “subsequent and separate alleged default created a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action.” Singleton, 882 So.2d at 1008. Therefore, with each subsequent default, the statute of limitations runs from the date of each new default providing the mortgagee the right, but not the obligation, to accelerate all sums then due under the note and mortgage.
Consistent with the reasoning of Singleton, the statute of limitations on the balance under the note and mortgage would not continue to run after an involuntary dismissal, and thus the mortgagee would not be barred by the statute of limitations from filing a successive foreclosure action premised on a “separate and distinct” default. Rather, after the dismissal, the parties are simply placed back in the same contractual relationship as before, where the residential mortgage remained an installment loan, and the acceleration of the residential mortgage declared in the unsuccessful foreclosure action is revoked.
III. Significance of an Involuntary Dismissal and Reinstatement Provision
Having reaffirmed our prior holding in Singleton and the application of its reasoning to a statute of limitations context, we finally consider whether the type of dismissal of a foreclosure action has any bearing on our analysis and the effect of the Mortgage’s reinstatement provision. In this case, the first foreclosure action was dismissed pursuant to Florida Rule of Civil *1020 Procedure 1.420, which provides for involuntary dismissals, and is the rule upon which the rephrased certified question is premised. Involuntary dismissal of a legal action by a court under Rule 1.420(b) terminates a court’s jurisdiction over that action and may be with or without prejudice. A dismissal under Rule 1.420(b) operates as an adjudication on the merits as long as the dismissal was not for “lack of jurisdiction or for improper venue or for lack of an indispensable party,” neither of which were a basis for the trial court’s dismissal of the Bank’s foreclosure action in this case.
The Fifth District determined that the involuntary dismissal was with prejudice but concluded that “the distinction is not material for purposes” of the statute of limitations analysis. See Bartram, 140 So.3d at 1013 n. 1. We agree. While a dismissal without prejudice would allow a mortgagee to bring another foreclosure action premised on the same default as long as the action was brought within five years of the default per section 95.11(2)(c), critical to our analysis is whether the foreclosure action was premised on a default occurring subsequent to the dismissal of the first foreclosure action. As the federal district court in Dorta reasoned, “if the mortgagee’s foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file subsequent foreclosure actions—and to seek acceleration of the entire debt—so long as they are based on separate defaults,” 2014 WL 1152917 at *6 (emphasis added). Accord Espinoza v. Countrywide Home Loans Servicing, L.P., No. 14-20756-CIV, 2014 WL 3845795, at *4 (S.D.Fla. Aug. 5, 2014) (finding the issue of whether the initial foreclosure action was dismissed with or without prejudice a distinction that was “irrelevant” to its analysis of whether acceleration of a mortgage note barred a subsequent foreclosure action brought outside the statute of limitations period).
Whether the dismissal of the initial foreclosure action by the court was with or without prejudice may be relevant to the mortgagee’s ability to collect on past defaults. However, it is entirely consistent with, and follows from, our reasoning in Singleton that each subsequent default accruing after the dismissal of an earlier foreclosure action creates a new cause of action, regardless of whether that dismissal was entered with or without prejudice.
Our conclusion is buttressed by the reinstatement provision of the Residential Mortgage that by its express ta-ms granted the mortgagor, even after acceleration, the continuing right to reinstate the Mortgage and note by paying only the amounts past due as if no acceleration had occurred. Specifically, the reinstatement provision in paragraph 19 of Bartram’s form residential mortgage gave Bartram “the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of ... (c) entry of a judgment enforcing this Security Instrument,” as long as Bartram “(a) pa[id] the Lender all sums which then would be due under this Security Instrument and Note as if no acceleration had occurred.”
Under the reinstatement provision of paragraph 19, then, even after the optional acceleration provision was exercised through the filing of a foreclosure action— as it was in this case—the mortgagor was not obligated to pay the accelerated sums due under the note until final judgment was entered and needed only to bring the loan current and meet other conditions— such as paying expenses related to the enforcement of the security interest and meeting other requirements established by the mortgagee-lender to ensure the mortgagee-lender’s interest in the property would remain unchanged—to avoid foreclosure. “Stated another way, despite acceleration of the balance due and the filing of an action to foreclosure, the installment *1021 nature of a loan secured by such a mortgage continues until a final judgment of foreclosure is entered and no action is necessary to reinstate it via a notice of ‘deceleration’ or otherwise.” Beauvais, 188 So.3d at 947. Or, as the Real Property Law Section of the Florida Bar has explained, “[tjhe lender’s right to accelerate is subject to the borrower’s continuing right to cure,” Brief for The Real Property Probate & Trust Law Section of the Florida Bar at 8, Beauvais, 188 So.3d 938 (Fla. 3d DCA 2016), 2015 WL 6406768, at *8. In the absence of a final judgment in favor of the mortgagee, the mortgagor still had the right under paragraph 19 of the Mortgage, the reinstatement provision, to cure the default and to continue making monthly installment payments.
Accepting Bartram’s argument that the installment nature of his contract terminated once the mortgagee attempted to exercise the mortgage contract’s optional acceleration clause—ignoring the existence of the mortgage’s reinstatement provision—would permit the mortgagee only one opportunity to enforce the mortgage despite the occurrence of any future defaults. As we cautioned in Singleton, “justice would not be served if the mortgagee was barred from challenging the subsequent default payment solely because he failed to prove the earlier alleged default.” 882 So.2d at 1008. Following to its logical conclusion Bartram’s argument that acceleration of the loan was effective before final judgment in favor of the mortgagee-lender in a foreclosure action would mean that the mortgagor-borrower would owe the accelerated amount after the dismissal, effectively rendering the reinstatement provision a nullity, and—in most cases— leading to an unavoidable default.
IY. This Case
Here,.the Bank’s first foreclosure action was involuntarily dismissed, and therefore there was no judicial determination that a default actually occurred. Thus, even if the note had been accelerated through the Bank’s .foreclosure complaint, the dismissal of the foreclosure action had the effect of revoking the acceleration. By the express terms of the reinstatement provision, if, in the month after the dismissal of the foreclosure action, Bartram began to make monthly payments on the note, the Bank could not have subsequently accelerated the entire note until there were future defaults. Once there were future defaults, however, the Bank had the right to file a subsequent foreclosure action—and to seek acceleration of all sums due under the note—so long as the foreclosure action was based on a subsequent default, and the statute of limitations had not run on that particular default.
There have been many claims of unfair and predatory practices by banks and mortgage holders in the aftermath of the financial crisis that shook the country, and in particular, Florida. See, e.g., Pino v. Bank of N.Y., 121 So.3d 23, 27 (Fla.2013) (discussing allegations of fraudulent backdating of mortgage assignments); see also In re Amends, to Fla. Rules of Civ. Pro.— Form 1.996, 51 So.3d 1140 (Fla.2010) (noting the necessity for verification of ownership of the note or right to enforce the note in a foreclosure action because of “recent reports of alleged document fraud and forgery in mortgage foreclosure cases”). Some of these claims have included allegations that mortgage holders have precipitously sought foreclosure even though the mortgagor missed only one or two payments and attempted to cure their defaults. In this case, quite the opposite is true. Bartram raised no defense as to the terms of the Mortgage and note itself. His sole claim is that the Bank lost the right to seek foreclosure of the Mortgage based on distinct defaults that occurred subsequent to the dismissal of the initial foreclosure complaint.
*1022 After Bartram defaulted on the Mortgage, the Bank, in accordance with the terms of the mortgage contract, notified Bartram that failure to cure his past defaults would result in acceleration of the sums due under the mortgage and judicial foreclosure. When Bartram failed to cure the past defaults, the Bank filed its foreclosure complaint and exercised the optional acceleration clause. Yet, the reinstatement provision of the Mortgage afforded Bartram the opportunity to continue the installment nature of the loan by curing the past defaults. Until final judgment was entered in favor of the Bank, Bartram was not obligated to pay the accelerated loan amount. Dismissal of the foreclosure action therefore returned the parties to their pre-foreclosure complaint status. In considering the law, the facts, and equity, Bartram’s position simply has no validity.
CONCLUSION
The Fifth District properly extended our reasoning in Singleton to the statute of limitations context in a mortgage foreclosure action. Here, the Bank’s initial foreclosure action was involuntarily dismissed. Therefore, as we previously explained in Singleton, the dismissal returned the parties back to “the same contractual relationship with the same continuing obligations.” 882 So.2d at 1007. Bartram and the Bank’s prior contractual relationship gave Bartram the opportunity to continue making his mortgage payments, and gave the Bank the right to exercise its remedy of acceleration through a foreclosure action if Bartram subsequently defaulted on a payment separate from the default upon which the Bank predicated its first foreclosure action. Therefore, the Bank’s attempted prior acceleration in a foreclosure action that was involuntarily dismissed did not trigger the statute of limitations to bar future foreclosure actions based on separate defaults.
Accordingly, we approve the Fifth District’s decision in Bartram and answer the rephrased certified question in the negative.
It is so ordered.
LABARGA, C.J., and QUINCE, CANADY, and PERRY, JJ., concur.
POLSTON, J., concurs in result.
LEWIS, J., concurs in result only with an opinion.

. In addition to the briefs of the parties, we have also reviewed briefs submitted on behalf of the parties by the following amici curiae: the U.S. Financial Network, the Mortgage Bankers Association and the American Legal and Financial Network on behalf of Respondent and Bradford and Cheri Langworthy and the Titcktin Law Group, P.A., Baywinds Community Association, Upside Property Investment, LLC, the Florida Alliance for Consumer Protection, the Community Associations Institute, and the National Association of Consumer Advocates on behalf of Bartram.

. Our holding is consistent with the views of the excellent amici briefs submitted by the Real Property Probate & Law Section of The Florida Bar, The Business Law Section of The Florida Bar, and the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation at the request of the Third District in Deutsche Bank Trust Co. Americas v. Beauvais, 188 So.3d 938 (Fla. 3d DCA 2016). These amici briefs addressed the same issue- presented by the rephrased certified question and limited their discussion to the terms of the standard form mortgage that is the subject of this case.

. Gideon Gratsiani was substituted as a party by order of this Court after Gratsiani purchased Patricia Bartram’s mortgage.

. Paragraph 18 concerned the transfer of the mortgaged property in a real estate sale without the Lender’s "prior written consent,” and required "immediate payment in full of of all sums secured by this Security Instrument” if breached.

. The Record does not indicate what action occurred, if any, in the first foreclosure action from the date the complaint was filed in 2006 until it was dismissed in 2011.

. On May 24, 2012, Bartram filed a motion for default against the Bank for failure to respond to his crossclaim, but the trial court never ruled on this motion.