[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14662
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-24036-MGC


LIBARDO GOMEZ,

                                        Plaintiff - Appellant,

versus

HOUSEHOLD FINANCE CORPORATION, III,
a Delaware corporation,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
a Delaware corporation,
HSBC MORTGAGE SERVICES, INC.,
a Delaware corporation,
VOLT ASSET HOLDINGS TRUST XVI,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 12, 2017)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Libardo Gomez appeals the dismissal of his putative class-action complaint, in which he sought a declaration that the promissory note and mortgage encumbering his home were unenforceable due to the running of the statute of limitations on foreclosure proceedings.  After review of the record and the pertinent law, we AFFIRM.

**BACKGROUND**

In July 2005, Gomez and his wife obtained a loan from Wilmington Finance totaling $190,000 in order to purchase a condominium in Miami, Florida. Gomez's monthly repayment obligations were memorialized in a promissory note (the "Note") that will mature on September 1, 2035, and were secured by a mortgage on the home (the "Mortgage").  The Mortgage names Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Wilmington

2

Finance.  The Note and Mortgage were subsequently assigned to a separate entity called Household Finance Corporation III ("Household").

The Mortgage contains an optional acceleration clause, under which the lender holds a right to accelerate outstanding payments in the event of default as long as it provides the mortgagor with notice of the default and at least thirty days to cure.  In turn, the mortgagor retains a right to reinstate the Note and Mortgage after acceleration if it meets certain conditions specified in the Mortgage, including cure of all past payment defaults.

Gomez defaulted on the loan on November 1, 2007, by failing to make scheduled payments.  On April 2, 2008, Household initiated a foreclosure proceeding and expressly notified Gomez that, "[b]y reason of said default," Household was exercising "its option to declare the entire principal balance and accrued interest due and payable" in addition to foreclosing the Mortgage.  The court presiding over the foreclosure proceeding entered judgment in favor of Household shortly thereafter.

After judgment was entered, but before the foreclosure process began, Household moved the court to vacate its judgment because, according to Household, the matter had been "resolved by the obligation being reinstated."  The

3

court granted the motion, dismissing the foreclosure suit without prejudice and ordering the return of the Note and Mortgage to Household.

Roughly one year later, Household assigned the Note and Mortgage to HSBC Mortgage Services, Inc. ("HSBC"), which ultimately assigned its interest to an entity called Volt Asset Holdings Trust XVI ("Volt").  Gomez named MERS, Household, HSBC, and Volt as defendants in the underlying putative class action.

Despite Gomez's payment delinquencies since November 1, 2007, neither Household nor any of its assignees has successfully foreclosed the mortgage.[1]  In his complaint before the district court, Gomez alleged that Defendants' failure to re-initiate foreclosure proceedings within the five-year limitations period for such actions has rendered the Note and Mortgage unenforceable.  As such, Gomez sought a declaratory judgment extinguishing the Note and Mortgage and quieting title to the property.  The claim is founded on Gomez's contentions that, under Florida law, the five-year limitations period should be measured from the date of his initial default—or, at the latest, from the date on which the lender accelerated

---

[1]  Gomez asserts in his briefing on appeal that HSBC filed a foreclosure proceeding against Gomez in June 2009 and that the suit was dismissed involuntarily two years later for failure to prosecute.  Gomez failed, however, to allege facts regarding this second proceeding in his complaint, and evidence of the proceeding is not part of the record on appeal.  As such, we do not consider this proceeding in our analysis.

4

payment—and that the expiration of that period precludes enforcement of any subsequent missed payments under the Note. Put differently, Gomez argues that his lender's failure to foreclose on the property within five years of its initial foreclosure filing renders all future payments due under the Note and Mortgage unenforceable.

The district court rejected Gomez's narrow interpretation of the statute of limitations and dismissed his complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Gomez appeals that dismissal. We review *de novo*, accepting the complaint's allegations as true and construing them in the light most favorable to Gomez. *See CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1336 (11th Cir. 2017).

## DISCUSSION

Gomez's complaint sought two forms of relief: a declaration that any causes of action under the Note and Mortgage had expired under the statute of limitations and thus were unenforceable against Gomez and the mortgaged property; and an order quieting title to the property in Gomez. It is undisputed that Florida law governs Gomez's substantive claims. Florida's statute of limitations states that an action to foreclose a mortgage must be commenced within five years of the date on which the cause of action accrues. Fla. Stat. § 95.11(2)(b)–(c), § 95.031(1).

5

There is no dispute in this case that Household notified Gomez of its intent to accelerate the Note at the time Household filed its foreclosure action. But Gomez and Defendants disagree as to the effect of the foreclosure action's subsequent dismissal on the acceleration of the Note. Defendants argue, in line with the district court's conclusion below, that the voluntary dismissal of the foreclosure action without prejudice had the effect of reinstating the obligations of the Note and "decelerating" payments thereunder. In Defendants' view, because the Note was reinstated, each of Gomez's subsequent defaults constituted separate causes of action from which distinct five-year limitations periods must be calculated. Thus, any defaults that occurred less than five years ago remain enforceable under the Note and Mortgage.

Gomez contends that the dismissal did not have the effect of automatically reinstating the Note and Mortgage, and that none of the defendant entities took steps to decelerate payments due. Because payments under the Note were accelerated as of the filing of the foreclosure proceeding on April 2, 2008, the limitations period began to run at that time and covered the entire outstanding balance on the Note. On this theory, the statute of limitations as to the entirety of the loan expired on April 2, 2013, meaning that the Note is currently unenforceable and the Mortgage may not be foreclosed.

6

The parties' positions raise two questions of Florida law.  *First*:  Does the dismissal of a foreclosure action in which the lender exercised its option to accelerate the debt have the effect of "decelerating" payment obligations under the applicable note and mortgage, thus restoring the parties' initial contractual relationship?  And *second*:  Do a mortgagor's missed installment payments on a mortgage loan constitute separate and distinct causes of action for purposes of analyzing the statute of limitations?

The Florida Supreme Court answered both these questions in the affirmative in *Bartram v. U.S. Bank National Association*, 211 So. 3d 1009 (Fla. 2016).[2]  The facts before the court in *Bartram* were identical in several material respects to the facts before us.  Mortgagor Bartram borrowed over $650,000 to purchase a home and secured the loan with a mortgage on the property.  *Id*. at 1013.  Bartram's mortgage gave the lender a right to accelerate payments upon default; in turn, the mortgagor was empowered to reinstate the note post-acceleration once certain

---

[2]  These two questions came before the Florida Supreme Court upon certification by the Fifth District Court of Appeals.  The Supreme Court's review remained pending at the time Gomez filed the instant appeal.  Given the relevance of *Bartram* to the arguments on which Gomez based his claims, this Court held Gomez's appeal in abeyance pending the Supreme Court's final decision.

conditions were met.[3] *Id*. at 1013–14.  Bartram stopped making monthly payments on his mortgage shortly after executing the loan.  *Id*. at 1014.  In response, the lender initiated a foreclosure action against Bartram and exercised its option to accelerate payments.  *Id*.  Nearly five years later, the foreclosure action was involuntarily dismissed due to the lender's failure to appear at a case-management conference.  *Id*.  The lender made no subsequent efforts to reinitiate the foreclosure action.  *Id*.  Five years after the lender's first foreclosure filing, Bartram sought a declaratory judgment canceling the mortgage and quieting title to his property, arguing—as Gomez does here—that the expiration of the limitations period barred subsequent enforcement.  *Id*. at 1015.

The Florida Supreme Court rejected Bartram's argument.  First, it held that "a subsequent and separate alleged default create[s] a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action," thus causing a new limitations period to begin to run from the date of each new default.  *Bartram*, 211 So. 3d at 1019 (citing *Singleton v. Greymar Assoc.*, 882 So. 2d 1004, 1008 (Fla. 2004)) (internal quotation marks omitted).  Second, the

---

[3]  The mortgages Bartram and Gomez signed were standard residential form mortgages whose language is substantively identical.

8

Court concluded that, where a note contains a reinstatement provision, dismissal of a foreclosure action with or without prejudice has the effect of decelerating future payment obligations, thus restoring the "installment nature" of the note. *See id*. at 1020–21. Therefore, in a case like Bartram's:

> the statute of limitations on the balance under the note and mortgage would not continue to run after an involuntary dismissal, and thus the mortgagee would not be barred by the statute of limitations from filing a successive foreclosure action premised on a 'separate and distinct' default. Rather, after the dismissal, the parties are simply placed back in the same contractual relationship as before, where the residential mortgage remained an installment loan, and the acceleration of the residential mortgage declared in the unsuccessful foreclosure action is revoked.

*Id.* at 1019. The Court made clear that, for purposes of this analysis, it is irrelevant whether the foreclosure suit was dismissed with or without prejudice. *Id*. at 1020. Thus, under the Court's holdings, Bartram's lender remained free to recover unpaid installments less than five years old, even though the lender had failed to timely pursue foreclosure on Bartram's first round of defaults. *See id*. at 1021–22.

Our primary task is to apply Gomez's facts to the law articulated in *Bartram*. In so doing, we note that the only meaningful factual distinction between Bartram and Gomez's respective cases is that, in the former, the lender's foreclosure action was dismissed involuntarily, while the suit against Gomez was dismissed voluntarily. The analysis and express holdings of *Bartram* give no indication that

9

this distinction is significant, and it therefore does not alter our conclusion under Gomez's facts.[4]

Given the near-identical postures of this case and *Bartram*, we conclude that Gomez's complaint fails to state a claim for the declaratory relief sought because it fails to allege that Gomez's Note and Mortgage are not enforceable as to payment defaults that occurred subsequent to Household's initial foreclosure filing. Because Gomez has failed to allege that the Note and Mortgage are unenforceable, his pursuit of an order quieting title to the mortgaged property similarly fails. The district court's analysis below tracked the reasoning of *Bartram* and thus was without error.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Gomez's complaint for failure to state a claim.[5]

---

[4] Indeed, in resolving a split among appellate courts on the legal issues presented in *Bartram*, the Florida Supreme Court embraced an appellate-court opinion that applied these issues to a voluntary-dismissal fact pattern. *See Bartram*, 211 So. 3d at 1018 (citing *Evergrene Partners, Inc. v. Citibank, N.A.*, 143 So. 3d 954, 955 (Fla. 4th DCA 2014)).

[5] Because we affirm on the basis of *Bartram*, we do not reach the alternative grounds for dismissal Defendants raise on appeal.

10