# Third District Court of Appeal

## State of Florida

Opinion filed November 21, 2018.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D17-1603
Lower Tribunal No. 14-24174

————————————

**Judith Hayes,**
Appellant,

vs.

**Reverse Mortgage Solutions, Inc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Migna Sanchez-Llorens, Judge.

Legal Services of Greater Miami, Inc., and Jacqueline C. Ledon and Jeffrey M. Hearne, for appellant.

GrayRobinson, P.A., and Frank A. Shepherd, Terrance W. Anderson, Jr., and Bryan F. DuBon; Robertson, Anschutz & Schneid, P.L., and David Rosenberg and Cynthia L. Comras (Boca Raton), for appellee.

Before SUAREZ, LOGUE, and LINDSEY, JJ.

LOGUE, J.

Appellant Judith Hayes appeals a Final Judgment of Foreclosure. This case presents an issue of first impression as to when the statute of limitations in section 95.11(2)(c), Florida Statutes, begins to run for purposes of a reverse mortgage where the borrower died before the note matured. We hold the statute of limitations does not begin until the note matures and, accordingly, we affirm.

## I. BACKGROUND

On October 26, 2007, Ruby Hayes, a single, 78-year old woman, executed a home equity conversion note and mortgage, commonly known as a reverse mortgage. The note and mortgage were signed by her daughter, Appellant Judith Hayes, acting as attorney-in-fact. Under the terms of the note and mortgage, the Lender, Countrywide Bank, FSB, advanced moneys to the borrower and the borrower was required to pay the principal and interest on November 25, 2079.

Crucial to the contract between the parties was Paragraph 9 of the reverse mortgage which contained an optional acceleration clause identifying two distinct conditions that would allow the borrower to accelerate the debt and foreclose, including the death of the borrower or the transfer of title. Paragraph 9 reads:

> (a) Due and Payable. Lender <u>may</u> require immediate payment in full of all sums secured by this Security Instrument if:
>
> (i) <u>A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or</u>

2

(ii) <u>All of a Borrower's title in the Property</u> (or his or her beneficial interest in a trust owning all or part of the Property) <u>is</u> sold or otherwise <u>transferred</u> and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or a beneficial interest in a trust with such an interest in the Property).

(Emphasis added).

On May 21, 2008, less than one year after she executed the note and mortgage, Ruby Hayes passed away. In her will, she devised the house to Judith Hayes, who made the house her homestead.

On July 6, 2009, Bank of America, as the holder of the note and mortgage, filed the first foreclosure action. The parties stipulated that that case was closed in 2013 for reasons not reflected in the record.

On September 18, 2014, over five years later, Appellee Reverse Mortgage Solutions, as holder of the note and mortgage, filed the instant foreclosure action. Following a non-jury trial, Judith Hayes moved to dismiss the case, arguing that this foreclosure action was time-barred by the five-year statute of limitations. The trial court entered a final judgment of foreclosure. Judith Hayes timely appealed.

## II. STANDARD OF REVIEW

3

"[A] legal issue surrounding a statute of limitations question is an issue of law subject to de novo review." U.S. Bank Nat'l Ass'n v. Amaya, --- So. 3d ----, No. 3D17-576, 2018 WL 3553905, at *2 (Fla. 3d DCA July 25, 2018) (quoting Nationstar Mortg., LLC v. Sunderman, 201 So. 3d 139, 140 (Fla. 3d DCA 2015)).

## III.  ANALYSIS

In this case of first impression, Judith Hayes contends that the second foreclosure action filed by Reverse Mortgage Solutions in 2014 was time-barred by section 95.11(2)(c), Florida Statutes, because the cause of action accrued on the date Ruby Hayes died in 2008. Alternatively, Judith Hayes contends that the cause of action accrued upon the mortgagee's acceleration of the reverse mortgage when the first foreclosure action was filed in 2009. We disagree with both arguments. In so holding, we find the crucial fact in this case is that the note does not mature until November 25, 2079.

First, the statute of limitations does not run from the death of the borrower because acceleration of the debt based on the death of the borrower is optional. Paragraph 9 of the mortgage confers upon the mortgagee the right, but not the obligation, to accelerate payment of the debt.[1] For this reason, the occurrence of the borrower's death does not amount to the accrual of the foreclosure cause of

---

[1] As a result, this case is readily distinguishable from Wendover Financial Services v. Ridgeway, 28 N.Y.S. 3d 535 (N.Y. 2016), which involved a mortgage with a mandatory acceleration provision.

action for purposes of the statute of limitations, it merely presents the mortgagee with the opportunity to elect whether to accelerate payment and exercise its foreclosure rights, or not. Should the mortgagee choose not to exercise that option, the full amount of the debt would still be due upon maturation of the mortgage.

Second, under existing precedent, the statute of limitations does not run from an interim acceleration associated with an unsuccessful foreclosure attempt in a manner to bar a subsequent foreclosures filed within five years of the note reaching maturity. The reasoning upon which this principle rests first emerged in the context of res judicata and then was applied to the statute of limitations.

In Singleton v. Greymar Assocs., 882 So. 2d 1004 (Fla. 2004), the Supreme Court of Florida held that "res judicata does not necessarily bar successive foreclosure suits, regardless of whether or not [sic] the mortgagee sought to accelerate payments on the note in the first suit." Id. at 1008. The Court explained:

> If res judicata prevented a mortgagee from acting on a subsequent default even after an earlier claimed default could not be established, the mortgagor would have no incentive to make future timely payments on the note. The adjudication of the earlier default would essentially insulate her from future foreclosure actions on the note— merely because she prevailed in the first action. Clearly, justice would not be served if the mortgagee was barred from challenging the subsequent default payment solely because he failed to prove the earlier alleged default.

> We must also remember that foreclosure is an equitable remedy and there may be some tension between a court's authority to adjudicate the equities and the legal doctrine of res judicata. The ends of justice require that the doctrine of res judicata not be applied so strictly so as to prevent mortgagees from being able to challenge multiple defaults on a mortgage. We can find no valid basis for barring mortgagees from challenging subsequent defaults on a mortgage and note solely because they did not prevail in a previous attempted foreclosure based upon a separate alleged default.

Id. at 1007-08 (citation omitted).

In Deutsche Bank Trust Co. Americas v. Beauvais, 188 So. 3d 938 (Fla. 3d DCA 2016), we followed the reasoning of Singleton to conclude the statute of limitations does not act to bar successive foreclosure proceedings involving conventional installment mortgages. Beauvais, 188 So. 3d at 943-44 ("Here we follow that choice. And, as have numerous post-Singleton courts before us, we apply this determination, while made in the context of a res judicata defense, to a statute of limitations defense.").

Shortly thereafter, the Supreme Court of Florida decided Bartram v. U.S. Bank Nat. Ass'n., 211 So. 3d 1009 (Fla. 2016). There, the Court relied, in part, on our decision in Beauvais to extend the reasoning set forth in Singleton concerning defenses based on res judicata regarding successive foreclosures to defenses based on statutes of limitations in successive foreclosures. Bartram, 211 So. 3d at 1017-

6

22. The Court rejected the view that acceleration of a debt in a foreclosure action involving a conventional mortgage with an optional acceleration clause and reinstatement provision caused the statute of limitations to bar a successive foreclosure proceeding. Id. at 1019-22.

Bartram, and this Court's decision in Beauvais, conclude that the statute of limitations does not bar the filing of a successive foreclosure action after dismissal of a mortgage foreclosure action accelerating payment when the note has not yet matured. Importantly, each of those cases rejected the view that an acceleration of payments in a foreclosure that fails can form the basis for a statute of limitations defense on a subsequent foreclosure based on a subsequent default during the life of the note. To hold otherwise, the Supreme Court explained, would result in a windfall to the borrower constituting "unjust enrichment or other inequitable results." Bartram, 211 So. 3d at 1017 (quoting Singleton, 882 So. 2d at 1007-08); Beauvais, 188 So. 3d at 943-44.

While Singleton, Bartram, and Beauvais dealt with conventional mortgages, their reasoning applies with equal force to the reverse mortgage in this case. Of course, a reverse mortgage differs from a conventional mortgage because "a reverse mortgage allows elderly homeowners to receive monthly payments from a lender based upon the homeowners' equity in their principal residence." Smith v. Reverse Mortg. Sols., 200 So. 3d 221, 222-23 (Fla. 3d DCA 2016) (citing Bennett

v. Donovan, 703 F.3d 582, 584–85 (D.C. Cir. 2013)). "[I]n a reverse mortgage arrangement, the lender makes monthly payments to the elderly homeowners, and the homeowners' obligation to repay the lender ripens only upon the homeowners' death or when the homeowners move from their home." Smith, 200 So. 3d at 223 (citing Bennett, 703 F.3d at 584–85).

But, the holdings of Bartram and Beauvais were based on the fact that: (1) the mortgages at issue contained optional acceleration clauses; and (2) the notes had definitive maturation dates. The reverse mortgage here has those two characteristics.[2] The plain language in Paragraph 9 creates an acceleration clause that is neither automatic nor mandatory. It states that the mortgagee "may require immediate payment in full," upon the death of the mortgagor or the conveyance of all of the mortgagor's beneficial interest in the property to a non-mortgagor. See Smith, 200 So. 3d at 225, 228-29 & n.12 (construing identical language as creating

---

[2] The reverse mortgage at issue here also contains the type of a reinstatement clause relied upon by the controlling cases. See, e.g., Bartram, 211 So. 3d at 1020-22 (citations and internal quotations omitted) ("even after the optional acceleration provision was exercised . . . the mortgagor was not obligated to pay the accelerated sums due under the note until final judgment was entered and needed only to bring the loan current . . . .[t]he lender's right to accelerate is subject to the borrower's continuing right to cure."); Beauvais, 188 So. 3d 946-53 (citation omitted) ("Stated another way, despite acceleration of the balance due and the filing of an action to foreclose, the installment nature of a loan secured by such a mortgage continues until a final judgment of foreclosure is entered and no action is necessary to reinstate it via a notice of 'deceleration' or otherwise. . . . [a]fter the dismissal . . . the parties returned to the status quo that existed prior to the filing of the dismissed complaint.").

a condition precedent to a mortgagee's election to acceleration payment of the debt and noting that nothing in the opinion "should be construed to limit Reverse Mortgage Solutions' ability to file a new foreclosure action upon the future occurrence of any of the conditions precedent outlined in Paragraph 9 of the subject mortgage.").

In addition, the reverse mortgage in this case identifies a single, definitive, and readily ascertainable maturation date – November 25, 2079.[3] A decision by the mortgagee to not exercise an option, or to dismiss an earlier filed foreclosure proceeding, does not operate to bar the filing of a second foreclosure complaint at a later date because the entire amount due and owing is not due until that date. Unless the holder of the promissory note and mortgage in such a case reduces the mortgage lien on the property to a final judgment of foreclosure, the time within which the mortgagee may bring a foreclosure action under the mortgage agreement will expire after the five-year statute of limitations has run under the date of maturation. See § 95.11(2)(c), Fla. Stat.

Affirmed.

---

[3] The case before us is distinguishable from Financial Freedom Senior Funding Corp. v. Horrocks, 294 S.W. 3d 749, 754-56 (Tex. App. 2009) (concluding the date of accrual began on the date of the borrower's death because the note in that case did not identify a date of maturation, however, in an attempt to interpret the contract and identify a date of accrual, the court concluded that the conditions created a readily ascertainable time for payment).